# EXHIBIT A

# LEASE

**LEASE COPY**

W12/14 WALL REALTY LLC,

AS LANDLORD

TO

MORGAN FUNDING, INC.,

AS TENANT

PREMISES: PORTION OF FLOOR 8A
AT 14 WALL STREET, NEW YORK, NEW YORK

STANDARD FORM OF OFFICE LEASE    2/94

AGREEMENT OF LEASE, made as of this 9ᵗ day of November, 2003, between W12/14 WALL REALTY LLC ("Owner" or "Landlord"), a Delaware limited liability company having an office c/o Stellar Management Co., 156 William Street, New York, New York 10038, party of the first part, and MORGAN FUNDING, INC. ("Tenant"), a New Jersey corporation having an address at 26 Journal Square, Jersey City, New Jersey 07306, party of the second part.

WITNESSETH: Landlord hereby leases to Tenant and Tenant hereby hires from Landlord, a portion of the rentable area on floor 8A, as shown on the floor plan annexed hereto as Exhibit A and made a part hereof (hereinafter called the "premises" or the "demised premises" or the "Demised Premises"), in the building known as 14 Wall Street (hereinafter called the "building" or "Building"), in the Borough of Manhattan, City of New York, for the term and at the rental set forth in Article 38 hereto.

In the event that, at the commencement of the term of this lease, or thereafter, Tenant shall be in default in the payment of rent to Owner pursuant to the terms of another lease with Owner or with Owner's predecessor in interest, Owner may at Owner's option and without notice to Tenant add the amount of such arrears to any monthly installment of rent payable hereunder and the same shall be payable to Owner as additional rent.

The parties hereto, for themselves, their heirs, distributees, executors, administrators, legal representatives, successors and assigns, hereby covenant as follows:

Rent | 1. Tenant shall pay the rent as above and as hereinafter provided.

Occupancy | 2. Tenant shall use and occupy demised premises for

and for no other purpose.

Owner's satisfaction against all damages, interest, penalties and expenses, including, but not limited to, reasonable attorney's fees, by cash deposit or by surety bond in an amount and in a company satisfactory to Owner, amount and appeal any such laws, ordinances, orders, rules, regulations or requirements provided same is done with all reasonable promptness and provided such appeal shall not subject Owner to prosecution for a criminal offense or constitute a default under any lease or mortgage under which Owner may be obligated, or create the demised premises or any part thereof to be condemned or vacated. Tenant shall not do or permit any act or thing to be done in or to the demised premises which is contrary to law, or which will invalidate or be in conflict with public liability, fire or other policies of insurance at any time carried by or for the benefit of Owner with respect to the demised premises or the building of which the demised premises form a part, or which shall or might subject Owner to any liability or responsibility to any person or for property damage, Tenant shall not keep anything in the demised premises except as now or hereafter permitted by the Fire Department, Board of Fire Underwriters, Fire Insurance Rating Organization or other authority having jurisdiction, and then only in such manner and such quantity so as not to increase the rate for fire insurance applicable to the building, nor use the premises in a manner which will increase the insurance rate for the building or any property located therein over that in effect prior to the commencement of Tenant's occupancy. Tenant shall pay all costs, expenses, fines, penalties, or damages, which may be imposed upon Owner by reason of Tenant's failure to comply with the provisions of this article and if by reason of such failure the fire insurance rate shall, at the beginning of this lease or at any time thereafter, be higher than it otherwise would be, then Tenant shall reimburse Owner, as additional rent hereunder, for that portion of all fire insurance premiums thereafter paid by Owner which shall have been charged because of such failure by Tenant. In any action or proceeding wherein Owner and Tenant are parties, a schedule or "make-up" of rate for the building or demised premises issued by the New York Fire Insurance Exchange, or other body making fire insurance rates applicable to said premises shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rates then applicable to said premises. Tenant shall not place a load upon any floor of the demised premises exceeding the floor load per square foot area which it was designed to carry and which is allowed by law. Owner reserves the right to prescribe the weight and position of all safes, business machines and mechanical equipment. Such installations shall be placed and maintained by Tenant, at Tenant's expense, in settings sufficient, in Owner's judgement, to absorb and prevent vibration, noise and annoyance.

**Subordination:** 7. This lease is subject and subordinate to all ground or underlying leases and to all mortgages which may now or hereafter affect the real property or which demised premises are a part and to all renewals, modifications, consolidations, replacements and extensions of any such underlying leases and mortgages. This clause shall be self-operative and no further instrument of subordination shall be required by any ground or underlying lessor or by any mortgagee, affecting any lease or the real property of which the demised premises are a part. In confirmation of such subordination, Tenant shall from time to time execute promptly any certificate that Owner may request.

**Property Loss, Damage Reimbursement Indemnity:** 8. Owner or its agents shall not be liable for any damage to property of Tenant or of others entrusted to employees of the building, nor for loss of or damage to any property of Tenant by theft or otherwise, nor for any injury or damage to persons or property resulting from any cause of whatsoever nature, unless caused by or due to the negligence of Owner, its agents, servant or employees. Owner or its agent will not be liable for any such damage caused by other tenants or persons in, upon or about said building or caused by operations in construction of any private, public or quasi public work. If at any time any windows of the demised premises are temporarily closed, darkened or bricked up (or permanently closed, darkened or bricked up, if required by law) for any reason whatsoever including, but not limited to Owner's own acts, Owner shall not be liable for any damage Tenant may sustain thereby and Tenant shall not be entitled to any compensation therefor nor abatement or diminution of rent nor shall the same release Tenant from its obligations hereunder nor constitute an eviction. Tenant shall indemnify and save harmless Owner against and from all liabilities, obligations, damages, penalties, claims, costs and expenses for which Owner shall or may be reimbursed by insurance, including reasonable attorneys fees, paid, suffered or incurred as a result of any breach by Tenant, Tenant's agents, contractors, employees, invitees, or licensees, of any covenant or condition of this lease, or the carelessness, negligence or improper conduct of the Tenant, Tenant's agents, contractors, employees, invitees or licensees. Tenant's liability under this lease extends to the acts and omissions of any sub-tenant, and any agent, contractor, employee, invitee or licensee of any sub-tenant. In case any action or proceeding is brought against Owner by reason of any such claim, Tenant, upon written notice from Owner, will, at Tenant's expense, resist or defend such action or proceeding by counsel approved by Owner in writing, such approval not to be unreasonably withheld.

**Destruction Fire and Other Casualty:** 9. (a) If the demised premises or any part thereof shall be damaged by fire or other casualty, Tenant shall give immediate notice thereof to Owner and this lease shall continue in full force and effect except as hereinafter set forth. (b) If the demised premises are partially damaged or rendered partially unusable by fire or other casualty, the damage thereto shall be repaired by and at the expense of Owner and the rent and other items of additional rent, until such repair shall be substantially completed, shall be apportioned from the day following the casualty according to the part of the premises which is usable. (c) If the demised premises are totally damaged or rendered wholly unusable by fire or other casualty, then the rent and other items of additional rent as hereinafter expressly provided shall be proportionately paid up to the time of the casualty and thenceforth shall cease until the date when the premises shall have been repaired and restored by Owner (or sooner reoccupied in part by Tenant then rent shall be apportioned as provided in subsection (b) above), subject to Owner's right to elect not to restore the same as hereinafter provided. (d) If the demised premises are rendered wholly unusable (or whether or not the demised premises are damaged in whole or in part) if the building shall be so damaged that Owner shall decide to demolish it or to rebuild it, then, in any of such events, Owner may elect to terminate this lease by written notice to Tenant, given within 90 days after the fire or casualty, or 30 days after adjustment of the insurance claim for such fire or casualty, whichever is sooner, specifying a date for the expiration of the lease, which date shall

**Rider to be added if necessary.**

not be more than 60 days after the giving of such notice, and upon the date specified in such notice the term of this lease shall expire as fully and completely as if such date were the date above set for the termination of this lease and Tenant shall forthwith quit, surrender and vacate the premises without prejudice however, to Landlord's rights and remedies against Tenant under the lease provisions in effect prior to such termination, and any rent owing shall be paid up to such date and any payments of rent made by Tenant which were on account of any period subsequent to such date shall be returned to Tenant. Unless Owner shall serve a termination notice as provided for herein, Owner shall make the repairs and restorations under the conditions of (b) and (c) hereof, with all reasonable expedition, subject to delays due to adjustment of insurance claims, labor troubles and causes beyond Owner's control. After any such casualty, Tenant shall cooperate with Owner's restoration by removing from the premises as promptly as reasonably possible, all of Tenant's salvageable inventory and movable equipment, furniture, and other property. Tenant's liability for rent shall resume five (5) days after written notice from Owner that the premises are substantially ready for Tenant's occupancy. (e) Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, including Owner's obligation to restore under subparagraph (b) above, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Owner and Tenant each hereby releases and waives all right of recovery with respect to subparagraphs (b), (d), and (e) above, against the other or any one claiming through or under each of them by way of subrogation or otherwise. The release and waiver herein referred to shall be deemed to include any loss of or damage to the demised premises and/or to any personal property, equipment, trade fixtures, goods and merchandise located therein. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance. If, and to the extent, that such waiver can be obtained only by the payment of additional premiums, then the party benefiting from the waiver shall pay such premium within ten days after written demand or shall be deemed to have agreed that the party obtaining insurance coverage shall be free of any further obligation under the provisions hereof with respect to waiver of subrogation. Tenant acknowledges that Owner will not carry insurance on Tenant's furniture and/or furnishings or any fixtures or equipment, improvements, or appurtenances removable by Tenant and agrees that Owner will not be obligated to repair any damage thereto or replace the same. (f) Tenant hereby waives the provisions of Section 227 of the Real Property Law and agrees that the provisions of this article shall govern and control in lieu thereof.

**Eminent Domain:** 10. If the whole or any part of the demised premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, then and in that event, the term of this lease shall cease and terminate from the date of title vesting in such proceeding and Tenant shall have no claim for the value of any unexpired term of said lease and assigns to Owner, Tenant's entire interest in any such award. Tenant shall have the right to make an independent claim to the condemning authority for the value of Tenant's moving expenses and personal property, trade fixtures and equipment, provided Tenant is entitled pursuant to the terms of the lease to remove such property, trade fixtures and equipment at the end of the term and provided further such claim does not reduce Owner's award.

**Assignment, Mortgage, Etc.:** 11. Tenant, for itself, its heirs, distributees, executors, administrators, legal representative, successor and assigns, expressly covenants that it shall not assign, mortgage or encumber this agreement, nor underlet, or suffer or permit the demised premises or any part thereof to be used by others, without the prior written consent of Owner in each instance. Transfer of the majority of the stock of a corporate Tenant or the majority partnership interest of a partnership Tenant shall be deemed an assignment. If this lease be assigned, or if the demised premises or any part thereof be underlet or occupied by anybody other than Tenant, Owner may, after default by Tenant, collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, underletting, occupancy or collection shall be deemed a waiver of this covenant, or the acceptance of the assignee, under-tenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. The consent by Owner to an assignment or underletting shall not in any wise be construed to relieve Tenant from obtaining the express consent in writing of Owner to any further assignment or underletting.

**Electric Current:** 12. Rates and conditions in respect to submetering or rent inclusion, as the case may be, to be added in RIDER attached hereto. Tenant covenants and agrees that at all times its use of electric current shall not exceed the capacity of existing feeders to the building or the risers or wiring installation and Tenant may not use any electrical equipment which, in Owner's opinion, reasonably exercised, will overload such installations or interfere with the use thereof by other tenants of the building. The change at any time of the character of electric service shall in no wise make Owner liable or responsible to Tenant, for any loss, damages or expenses which Tenant may sustain.

**Access to Premises:** 13. Owner or Owner's agents shall have the right (but shall not be obligated) to enter the demised premises in any emergency at any time, and, at other reasonable times, to examine the same and to make such repairs, replacements and improvements as Owner may deem necessary and reasonably desirable to the demised premises or to any other portion of the building of which Owner may elect to perform. Tenant shall permit Owner to use and maintain and replace pipes and conduits in and through the demised premises and to erect new pipes and conduits therein provided they are concealed within the walls, floor, or ceiling. Owner may, during the progress of any work in the demised premises, take all necessary materials and equipment into said premises without the same constituting an eviction nor shall the Tenant be entitled to any abatement of rent while such work is in progress nor to any damages by reason of loss or interruption of business or otherwise. Throughout the term hereof Owner shall have the right to enter the demised premises at reasonable hours for the purpose of showing the same to prospective purchasers or mortgagees of the building, and during the last six months of the term for the purpose of showing the

same to prospective tenants. If Tenant is not present to open and permit an entry into the demised premises, Owner or Owner's agents may enter the same whenever such entry may be necessary or permissible by master key or forcibly and provided reasonable care is exercised to safeguard Tenant's property, such entry shall not render Owner or its agents liable therefor, nor in any event shall the obligations of Tenant hereunder be affected. If during the last month of the term Tenant shall have removed all or substantially all of Tenant's property therefrom, Owner may immediately enter, alter, renovate or redecorate the demised premises without limitation or abatement of rent, or incurring liability to Tenant for any compensation and such act shall have no effect on this lease or Tenant's obligations hereunder.

**Vault,**
**Vault Space,**
**Area:**

14. No Vaults, vault space or area, whether or not enclosed or covered, not within the property line of the building is leased hereunder, anything contained in or indicated on any sketch, blue print or plan, or anything contained elsewhere in this lease to the contrary notwithstanding. Owner makes no representation as to the location of the property line of the building. All vaults and vault space and all such areas not within the property line of the building, which Tenant may be permitted to use and/or occupy, is to be used and/or occupied under a revocable license, and if any such license be revoked, or if the amount of such space or area be diminished or required by any federal, state or municipal authority or public utility, Owner shall not be subject to any liability nor shall Tenant be entitled to any compensation or diminution or abatement of rent, nor shall such revocation, diminution or requisition be deemed constructive or actual eviction. Any tax, fee or charge of municipal authorities for such vault or area shall be paid by Tenant.

**Occupancy:**

15. Tenant will not at any time use or occupy the demised premises in violation of the certificate of occupancy issued for the building of which the demised premises are a part. Tenant has inspected the premises and accepts them as is, subject to the riders annexed hereto with respect to Owner's work, if any. In any event, Owner makes no representation as to the condition of the premises and Tenant agrees to accept the same subject to violations, whether or not of record.

**Bankruptcy:**

16. (a) Anything elsewhere in this lease to the contrary notwithstanding, this lease may be cancelled by Owner by the sending of a written notice to Tenant within a reasonable time after the happening of any one or more of the following events: (1) the commencement of a case in bankruptcy or under the laws of any state naming Tenant as the debtor; or (2) the making by Tenant of an assignment or any other arrangement for the benefit of creditors under any state statute. Neither Tenant nor any person claiming through or under Tenant, or by reason of any statute or order of court, shall thereafter be entitled to possession of the premises demised but shall forthwith quit and surrender the premises. If this lease shall be assigned in accordance with its terms, the provisions of this Article 16 shall be applicable only to the party then owning Tenant's interest in this lease.

(b) it is stipulated and agreed that in the event of the termination of this lease pursuant to (a) hereof, Owner shall forthwith, notwithstanding any other provisions of this lease to the contrary, be entitled to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises for the same period. In the computation of such damages the difference between any installment of rent becoming due hereunder after the date of termination and the fair and reasonable rental value of the demised premises for the period for which such installment was payable shall be discounted to the date of termination at the rate of four percent (4%) per annum. If such premises or any part thereof be re-let by the Owner for the unexpired term of said lease, or any part thereof, before presentation of proof of such liquidated damages to any court, commission or tribunal, the amount of rent reserved upon such re-letting shall be deemed to be the fair and reasonable rental value for the part or the whole of the premises so re-let during the term of the re-letting. Nothing herein contained shall limit or prejudice the right of the Owner to prove for and obtain as liquidated damages by reason of such termination, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved, whether or not such amount be greater, equal to, or less than the amount of the difference referred to above. **[Including]**

**Default:**

17. (1) If Tenant defaults [in fulfilling any of the covenants of this lease ~~other~~ than the covenants for] the payment of rent or additional rent; or if the demised premises become vacant or deserted; or if any execution or attachment shall be issued against Tenant or any of Tenant's property whereupon the demised premises shall be taken or occupied by someone other than Tenant; or if this lease be rejected under §235 of Title 11 of the U.S. Code (bankruptcy code); or if Tenant shall fail to move into or take possession of the premises within thirty (30) days after the commencement of the term of this lease, then, in any one or more of such events, upon Owner serving a written fifteen (15) days notice upon Tenant specifying the nature of said default upon the expiration of said fifteen (15) days, if Tenant shall have failed to comply with or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said fifteen (15) day period, and if Tenant shall not have diligently commenced curing such default within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default, then Owner may serve a written five (5) days' notice of cancellation of this lease upon Tenant, and upon the expiration of said five (5) days this lease and the term thereunder shall end and expire as fully and completely as if the expiration of such five (5) day period were the day herein definitely fixed for the end and expiration of this lease and the term thereof and Tenant shall then quit and surrender the demised premises to Owner but Tenant shall remain liable as hereinafter provided.

(2) If the notice provided for in (1) hereof shall have been given, and the term shall expire as aforesaid; ~~and if the default shall~~ ~~occur in the payment of the rent reserved herein as may then~~ ~~or additional~~ ~~rent or in any item of cost or expense herein~~ ~~or otherwise, which may be due and owing~~ ~~or otherwise~~; then and in any of such events Owner may without notice, re-enter the demised premises either by force or otherwise, and dispossess Tenant by summary proceedings or otherwise, and the legal representative of Tenant or other occupant of demised premises and remove their effects and hold the premises as if this lease had not been made, and Tenant hereby waives

the service of notice of intention to re-enter or to institute legal proceedings to that end. If Tenant shall make default hereunder prior to the date fixed as the commencement of any renewal or extension of this lease; Owner may cancel and terminate such renewal or extension agreement by written notice.

**Remedies of**
**Owner and**
**Waiver of**
**Redemption**

18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, (b) Owner may re-let the premises or any part thereof, either in the name of Owner or otherwise, for a term or terms, which may at Owner's option be less than or exceed the period which would otherwise have constituted the balance of the term of this lease and may grant concessions or free rent or charge a higher rent than that in this lease, and/or (c) Tenant or the legal representatives of Tenant shall also pay Owner as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of this lease. The failure of Owner to re-let the premises or any part or parts thereof shall not release or affect Tenant's liability for damages. In computing such liquidated damages there shall be added to the said deficiency such expenses as Owner may incur in connection with re-letting, such as legal expenses, reasonable attorneys' fees, brokerage, advertising and for keeping the demised premises in good order or for preparing the same for re-letting. Any such premises in good order or for preparing the same for re-letting. Any such liquidated damages shall be paid in monthly installments by Tenant on the rent day specified in this lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Owner to collect the deficiency for any subsequent month by a similar proceeding. Owner, in putting the demised premises in good order or preparing the same for re-rental may, at Owner's option, make such alterations, repairs, replacements, and/or decorations in the demised premises as Owner, in Owner's sole judgement, considers advisable and necessary for the purpose of reletting the demised premises, and the making of such alterations, repairs, replacements, and/or decorations shall not operate or be construed to release Tenant from liability hereunder as aforesaid. Owner shall in no event be liable in any way whatsoever for failure to re-let the demised premises, or in the event that the demised premises are re-let, for failure to collect the rent thereof under such re-letting, and in no event shall Tenant be entitled to receive any excess, if any, of such net rents collected over the sums payable by Tenant to Owner hereunder. In the event of a breach or threatened breach by Tenant of any of the covenants or provisions hereof, Owner shall have the right of re-entry, summary action and remedy allowed at law or in equity if re-entry, summary proceedings and other remedies were not herein provided for. Mention in this lease of any particular remedy, shall not preclude Owner from any other remedy, in law or in equity. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Owner obtaining possession of demised premises, by reason of the violation by Tenant of any of the covenants and conditions of this lease, or otherwise.

**Fees and**
**Expenses**

19. If Tenant shall default in the observance or performance of any term or covenant on Tenant's part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, after notice if required and upon expiration of any applicable grace period if any, (except in an emergency), then, unless otherwise provided elsewhere in this lease, Owner may immediately or at any time thereafter and without notice perform the obligation of Tenant thereunder. If Owner, in connection with the foregoing or in connection with any default by Tenant in the covenant to pay rent hereunder, makes any expenditures or incurs any obligations for the payment of money, including but not limited to reasonable attorneys' fees, in instituting, prosecuting or defending any action or proceeding, and prevails in any such action or proceeding then Tenant will reimburse Owner for such sums so paid or obligations incurred with interest and costs. The foregoing expenses incurred by reason of Tenant's default shall be deemed to be additional rent hereunder and shall be paid by Tenant to Owner within ten (10) days of rendition of any bill or statement to Tenant therefor. If Tenant's lease term shall have expired at the time of making of such expenditures or incurring of such obligations, such sums shall be recoverable by Owner, as damages.

**Building**
**Alterations**
**and**
**Management:**

20. Owner shall have the right at any time without the same constituting an eviction and without incurring liability to Tenant therefor to change the arrangement and/or location of public entrances, passageways, doors, doorways, corridors, elevators, stairs, toilets or other public parts of the building and to change the name, number or designation by which the building may be known. There shall be no allowance to Tenant for diminution of rental value and no liability on the part of Owner by reason of inconvenience, annoyance or injury to business arising from Owner or other Tenant making any repairs in the building or any such alterations, additions and improvements. Furthermore, Tenant shall not have any claim against Owner by reason of Owner's imposition of such controls of the manner of access to, the building by Tenant's social or business visitors as the Owner may deem necessary for the security of the building and its occupants.

**No Repre-**
**sentations**
**by Owner**

21. Neither Owner nor Owner's agents have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, the rents, leases, expenses of operation or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by Tenant by implication or otherwise except as expressly set forth in the provisions of this lease. Tenant has inspected the building and the demised premises and is thoroughly acquainted with their condition and agrees to take the same "as is" and acknowledges that the taking of possession of the demised premises by Tenant shall be conclusive evidence that the said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken, except as to latent defects. All understandings and agreements heretofore made between the parties hereto are merged in this contract, which alone fully and completely expresses the agreement between Owner and Tenant and any executory agreement

hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of it in whole or in part, unless such executory agreement is in writing and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

**End of Term**

22. Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Owner the demised premises, broom clean, in good order and condition, ordinary wear and damages which Tenant is not required to repair as provided elsewhere in this lease excepted, and Tenant shall remove all its property. Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this lease. If the last day of the term of this Lease or any renewal thereof, falls on Sunday, this lease shall expire at noon on the preceding Saturday unless it be a legal holiday in which case it shall expire at noon on the preceding business day.

**Quiet Enjoyment:**

23. Owner covenants and agrees with Tenant that upon Tenant paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Tenant's part to be observed and performed, Tenant may peaceably and quietly enjoy the premises hereby demised, subject, nevertheless, to the terms and conditions of this lease including, but not limited to, Article 31 hereof and to the ground leases, underlying leases and mortgages hereinbefore mentioned.

**Failure to Give Possession:**

24. If Owner is unable to give possession of the demised premises on the date of the commencement of the term hereof, because of the holding-over or retention of possession of any tenant, undertenant or occupants or if the demised premises are located in a building being constructed, because such building has not been sufficiently completed to make the premises ready for occupancy or because of the fact that a certificate of occupancy has not been procured or for any other reason, Owner shall not be subject to any liability for failure to give possession on said date and the validity of the lease shall not be impaired under such circumstances, nor shall the same be construed in any wise to extend the term of this lease, but the rent payable hereunder shall be abated (provided Tenant is not responsible for Owner's inability to obtain possession or complete construction) until after Owner shall have given Tenant written notice that the Owner is able to deliver possession in condition required by this lease. If permission is given to Tenant to enter into the possession of the demised premises or to occupy premises other than the demised premises prior to the date specified as the commencement of the term of this lease, Tenant covenants and agrees that such possession and/or occupancy shall be deemed to be under all the terms, covenants, conditions and provisions of this lease except the obligation to pay the fixed annual rent set forth in the preamble to this lease. The provisions of this article are intended to constitute "an express provision to the contrary" within the meaning of Section 223-a of the New York Real Property Law.

**No Waiver:**

25. The failure of Owner to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this lease or of any of the Rules or Regulations, set forth or hereafter adopted by Owner, shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation. The receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner. No payment by Tenant or receipt by Owner of a lesser amount than the monthly rent herein stipulated shall be deemed to be other than on account of the earliest stipulated rent, nor shall any endorsement or statement of any check or any letter accompanying any check or payment as rent be deemed an accord and satisfaction, and Owner may accept such check or payment without prejudice to Owner's right to recover the balance of such rent or pursue any other remedy in this lease provided. No act or thing done by Owner or Owner's agents during the term hereby demised shall be deemed an acceptance of a surrender of said premises, and no agreement to accept such surrender shall be valid unless in writing signed by Owner. No employee of Owner or Owner's agent shall have any power to accept the keys of said premises prior to the termination of the lease and the delivery of keys to any such agent or employee shall not operate as a termination of the lease or a surrender of the premises.

**Waiver of Trial by Jury:**

26. It is mutually agreed by and between Owner and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action proceeding or counterclaim brought by either of the parties hereto against the other (except for personal injury or property damage) on any matters whatsoever arising out of or in any way connected with this lease, the relationship of Owner and Tenant, Tenant's use of or occupancy of said premises, and any emergency statutory or any other statutory remedy. It is further mutually agreed that in the event Owner commences any proceeding or action for possession including a summary proceeding for possession of the premises, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding including a counterclaim under Article 4 except for statutory mandatory counterclaims.

**Inability to Perform:**

27. This Lease and the obligation of Tenant to pay rent hereunder and perform all of the other covenants and agreements hereunder on part of Tenant to be performed shall in no wise be affected, impaired or excused because Owner is unable to fulfill any of its obligations under this lease or to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make, or is delayed in making any repair, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment, fixtures, or other materials if Owner is prevented or delayed from so doing by reason of strike or labor troubles or any cause whatsoever including, but not limited to, government preemption or restrictions or by reason of any rule, order or regulation of any department or subdivision thereof of any government agency or by reason of the conditions which have been or are affected, either directly or indirectly, by war or other emergency.

**Bills and Notices:**

28. Except as otherwise in this lease provided, a bill, statement, notice or communication which Owner may desire or be required to give to Tenant, shall be deemed sufficiently given or rendered if, in writing, delivered to Tenant personally or sent by registered or certified mail addressed to Tenant at the

building of which the demised premises form a part or at the last known residence address or business address of Tenant or left at any of the aforesaid premises addressed to Tenant, and the time of the rendition of such bill or statement and of the giving of such notice or communication shall be deemed to be the time when the same is delivered to Tenant, mailed, or left at the premises as herein provided. Any notice by Tenant to Owner must be served by registered or certified mail addressed to Owner at the address first hereinbefore given or at such other address as Owner shall designate by written notice.

**Services Provided by Owners:**

29. As long as Tenant is not in default under any of the covenants of this lease beyond the applicable grace period provided in this lease for the curing of such defaults, Owner shall provide: (a) necessary elevator facilities on business days from 8 a.m. to 6 p.m. and have one elevator subject to call at all other times; (b) heat to the demised premises when and as required by law, on business days from 8 a.m. to 6 p.m.; (c) water for ordinary lavatory purposes, but if Tenant uses or consumes water for any other purposes or in unusual quantities (of which fact Owner shall be the sole judge), Owner may install a water meter at Tenant's expense which Tenant shall thereafter maintain at Tenant's expense in good working order and repair to register such water consumption and Tenant shall pay for water consumed as shown on said meter as additional rent as and when bills are rendered; (d) cleaning service for the demised premises on business days at Owner's expense provided that the same be kept in order by Tenant. If, however, said premises are to be kept clean by Tenant, it shall be done at Tenant's sole expense, in a manner reasonably satisfactory to Owner and no one other than persons approved by Owner shall be permitted to enter said premises or the building of which they are a part for such purpose. Tenant shall pay Owner the cost of removal of any of Tenant's refuse and rubbish from the building; (e) if the demised premises are serviced by Owner's air conditioning/cooling and ventilating system, air conditioning/cooling will be furnished to tenant from May 15th through September 30th on business days (Mondays through Fridays, holidays excepted) from 8:00 a.m. to 6:00 p.m., and ventilation will be furnished on business days during the aforesaid hours except when air conditioning/cooling is being furnished as aforesaid. If Tenant requires air conditioning/cooling or ventilation for more extended hours or on Saturdays, Sundays or on holidays, as defined under Owner's contract with Operating Engineers Local 94-94A, Owner will furnish the same at Tenant's expense. RIDER to be added in respect to rates and conditions for such additional service; (f) Owner reserves the right to stop services of the heating, elevators, plumbing, air-conditioning, electric, power systems or cleaning or other services, if any, when necessary by reason of accident or delay by Owner for repairs, alterations, replacements or improvements necessary or desirable in the judgment of Owner for as long as may be reasonably required by reason thereof. If the building of which the demised premises are a part supplies manually operated elevator service, Owner at any time may substitute automatic control elevator service and proceed diligently with alterations necessary therefor without in any wise affecting this lease or the obligation of Tenant thereunder.

**Captions:**

30. The Captions are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this lease nor the intent of any provisions thereof.

**Definitions:**

31. The term "office", or "offices", wherever used in this lease, shall not be construed to mean premises used as a store or stores, for the sale or display, at any time, of goods, wares or merchandise, of any kind, or as a restaurant, shop, booth, bootblack or other stand, barber shop, or for other similar purposes or for manufacturing. The term "Owner" means a landlord or lessor, and as used in this lease means only the owner, or the mortgagee in possession, for the time being of the land and building (or the owner of a lease of the building or of the land and building) of which the demised premises form a part, so that in the event of any sale or sales of said land and building or of said lease, or in the event of a lease of said building, or of the land and building, the said Owner shall be and hereby is entirely freed and relieved of all covenants and obligations of Owner hereunder, and it shall be deemed and construed without further agreement between the parties or their successors in interest, or between the parties and the purchaser, at any such sale, or the said lessee of the building, or of the land and building, that the purchaser or the lessee of the building has assumed and agreed to carry out any and all covenants and obligations of Owner, hereunder. The words "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning. The term "business days" as used in this lease shall exclude Saturdays, Sundays and all days as observed by the State or Federal Government as legal holidays and those designated as holidays by the applicable building service union employment service contract or by the applicable Operating Engineers contract with respect to HVAC service. Wherever it is expressly provided in this lease that consent shall not be unreasonably withheld, such consent shall not be unreasonably delayed.

**Adjacent Excavation-Shoring:**

32. If an excavation shall be made upon land adjacent to the demised premises, or shall be authorized to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the demised premises for the purpose of doing such work as said person shall deem necessary to preserve the wall or the building of which demised premises form a part from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Owner, or diminution or abatement of rent.

**Rules and Regulations:**

33. Tenant and Tenant's servants, employees, agents, visitors, and licensees shall observe faithfully, and comply strictly with, the Rules and Regulations and such other and further reasonable Rules and Regulations as Owner or Owner's agents may from time to time adopt. Notice of any additional rules or regulations shall be given in such manner as Owner may elect. In case Tenant disputes the reasonableness of any additional Rule or Regulation hereafter made or adopted by Owner or Owner's agents, the parties hereto agree to submit the question of the reasonableness of such Rule or Regulation for decision to the New York office of the American Arbitration Association, whose determination shall be final and conclusive upon the parties hereto. The right to dispute the reasonableness of any additional Rule or Regulation upon Tenant's part shall be deemed waived unless the same shall be asserted by service of a notice, in writing upon Owner within fifteen (15) days after the giving of notice thereof. Nothing

☞ Rider to be added if necessary.

in this lease contined shall be construed to impose upon Owner any duty or obligation to enforce the Rules and Regulations or terms, covenants or conditions in any other lease, as against any other tenant and Owner shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors or licensees.

**Security:** 34. Tenant has deposited with Owner the sum of $ ........ as security for the faithful performance and observance by Tenant of the terms, provisions and conditions of this lease; it is agreed that in the event Tenant defaults in respect of any of the terms, provisions and conditions of this lease, including, but not limited to, the payment of rent and additional rent, Owner may use, apply or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Tenant is in default or for any sum which Owner may expend or may be required to expend by reason of Tenant's default in respect of any of the terms, covenants and conditions of this lease, including but not limited to, any damages or deficiency in the re-letting of the premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Owner. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, the security shall be returned to Tenant after the date fixed as the end of the Lease and after delivery of entire possession of the demised premises to Owner. In the event of a sale of the land and building or leasing of the building, of which the demised premises form a part, Owner shall have the right to transfer the security to the vendee or lessee and Owner shall thereupon be released by Tenant from all liability for the return of such security; and Tenant agrees to look to the new Owner solely for the return of said security, and it is agreed that the provisions hereof shall apply to every transfer or assignment made of the security to ........

**☞** Space to be filled in or deleted.

that Owner. Tenant further covenants that it will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Owner nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment or attempted encumbrance.

**Estoppel Certificate:** 35. Tenant, at any time and from time to time, upon at least 10 days' prior notice by Owner, shall execute, acknowledge and deliver to Owner, and/or to any other person, firm or corporation specified by Owner, a statement certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and setting the modifications), stating the dates to which the rent and additional rent have been paid, and stating whether or not there exists any default by Owner under this Lease, and, if so, specifying each such default.

**Successors and Assigns:** 36. The covenants, conditions and agreements contained in this lease shall bind and inure to the benefit of Owner and Tenant and their respective heirs, distributees, executors, administrators, successors, and except as otherwise provided in this lease, their assigns. Tenant shall look only to Owner's estate and interest in the land and building, for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Owner in the event of any default by Owner hereunder, and no other property or assets of such Owner (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Owner and Tenant hereunder, or Tenant's use and occupancy of the demised premises.

**In Witness Whereof,** Owner and Tenant have respectively signed and sealed this lease as of the day and year first above written.

Witness for Owner:

.............................................    .............................................

.............................................    .............................................

Witness for Tenant:

.............................................    .............................................

## ACKNOWLEDGEMENTS

**CORPORATE OWNER**
STATE OF NEW YORK,    ss.:
County of

On this ........ day of ........ , 19 ....
before me personally came
to me known, who being by me duly sworn, did depose and say that he resides in
that he is the ........ of ........
the corporation described in and which executed the foregoing instrument; that he knows the seal of said corporation; the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

.............................................

**INDIVIDUAL OWNER**
STATE OF NEW YORK,    ss.: 1
County of

On this ........ day of ........ , 19 ....
before me personally came
to be known, and known to me to be the individual described in and who, as OWNER, executed the foregoing instrument and acknowledged to me that ........ he executed the same.

**CORPORATE TENANT**
STATE OF NEW YORK,    ss.:
County of

On this ........ day of ........ , 19 ....
before me personally came
to me known, who being by me duly sworn, did depose and say that he resides in
that he is the ........ of ........
the corporation described in and which executed the foregoing instrument, as TENANT; that he knows the seal of said corporation; the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

.............................................

**INDIVIDUAL TENANT**
STATE OF NEW YORK,    ss.:
County of

On this ........ day of ........ , 19 ....
before me personally came
to be known and known to me to be the individual described in and who, as TENANT, executed the foregoing instrument and acknowledged to me that ........ he executed the same.

## GUARANTY

FOR VALUE RECEIVED, and in consideration for, and as an inducement for Owner making the within lease with Tenant, the undersigned guarantees to Owner, Owner's successors and assigns, the full performance and observance of all the covenants, conditions and agreements, therein provided to be performed and observed by Tenant, including the "Rules and Regulations" as therein provided, without requiring any notice of non-payment, non-performance, or non-observance, or proof, or notice, or demand, whereby to charge the undersigned therefor, all of which the undersigned hereby expressly waives and expressly agrees that the validity of this agreement and the obligations of the guarantor hereunder shall in no wise be terminated, affected or impaired by reason of the assertion by Owner against Tenant of any of the rights or remedies reserved to Owner pursuant to the provisions of the within lease. The undersigned further covenants and agrees that this guaranty shall remain and continue in full force and effect as to any renewal, modification or extension of this lease and during any period when Tenant is occupying the premises as a "statutory tenant." As a further inducement to Owner to make this lease and in consideration thereof, Owner and the undersigned covenant and agree that in any action or proceeding brought by either Owner or the undersigned against the other on any matters whatsoever arising out of, under, or by virtue of the terms of this lease or of this guaranty that Owner and the undersigned shall and do hereby waive trial by jury.

Dated: .................................... , 19 ......

Guarantor ....................................

Witness ....................................

Guarantor's Residence ....................................

Business Address ....................................

Firm Name ....................................

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF            )

On this ........... day of .................... , 19 ...... , before me personally came .................... to me known and known to me to be the individual described in, and who executed the foregoing Guaranty and acknowledged to me that he executed the same.

.................................... Notary

## ☞☞ IMPORTANT - PLEASE READ ☜☜

### RULES AND REGULATIONS ATTACHED TO AND MADE A PART OF THIS LEASE
### IN ACCORDANCE WITH ARTICLE 33.

1. The sidewalks, entrances, driveways, passages, courts, elevators, vestibules, stairways, corridors or halls shall not be obstructed or encumbered by any Tenant or used for any purpose other than for ingress or egress from the demised premises and for delivery of merchandise and equipment in a prompt and efficient manner using elevators and passageways designated for such delivery by Owner. There shall not be used in any space, or in the public hall of the building, either by any Tenant or by jobbers or others in the delivery or receipt of merchandise, any hand trucks, except those equipped with rubber tires and side guards. If said premises are situated on the ground floor of the building, Tenant thereof shall further, at Tenant's expense, keep the sidewalk and curb in front of said premises clean and free from ice, snow, dirt and rubbish.

2. The water and wash closets and plumbing fixtures shall not be used for any purposes other than those for which they were designed or constructed and no sweepings, rubbish, rags, acids or other substances shall be deposited therein, and the expense of any breakage, stoppage, or damage resulting from the violation of this rule shall be borne by the Tenant who, or whose clerks, agents, employees or visitors, shall have caused it.

3. No carpet, rug or other article shall be hung or shaken out of any window of the building and no Tenant shall sweep or throw or permit to be swept or thrown from the demised premises any dirt or other substances into any of the corridors or halls, elevators, or out of the doors or windows or stairways of the building and substance in the demised premises, or permit or suffer the demised premises to be occupied or used in a manner offensive or objectionable to Owner or other occupants of the building by reason of noise, odors, and/or vibrations, or interfere in any way with other Tenants or those having business therein, nor shall any bicycles, vehicles, animals, fish, or birds be kept in or about the building. Smoking or carrying lighted cigars or cigarettes in the elevators of the building is prohibited.

4. No awnings or other projections shall be attached to the outside walls of the building without the prior written consent of Owner.

5. No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Tenant on any part of the outside of the demised premises or the building or on the inside of the demised premise if the same is visible from the outside of the premises without the prior written consent of Owner, except that the name of Tenant may appear on the entrance door of the premises. In the event of the violation of the foregoing by any Tenant, Owner may remove same without any liability, and may charge the expense incurred by such removal to Tenant or Tenants violating this rule. Interior signs on doors and directory tablet shall be inscribed, painted or affixed for each Tenant by Owner at the expense of such Tenant, and shall be of a size, color and style acceptable to Owner.

6. No Tenant shall mark, paint, drill into, or in any way deface any part of the demised premises or the building of which they form a part. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Owner, and as Owner may direct. No Tenant shall lay linoleum, or other similar floor covering, so that the same shall come in direct contact with the floor of the demised premises, and, if linoleum or other similar floor covering is desired to be used an interlining of builder's deadening felt shall be first affixed to the floor, by a paste or other material, soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

7. No additional locks or bolts of any kind shall be placed upon any of the doors or windows by any Tenant, nor shall any changes be made in existing locks or mechanism thereof. Each Tenant must, upon the termination of his Tenancy, restore to the Owner all keys of stores, offices and toilet rooms, either furnished to, or otherwise procured by, such Tenant, and in the event of the loss of any keys, so furnished, such Tenant shall pay to Owner the cost thereof.

8. Freight, furniture, business equipment, merchandise and bulky matter of any description shall be delivered to and removed from the premises only on the freight elevators and through the service entrances and corridors, and only during hours and in a manner approved by Owner. Owner reserves the right to inspect all freight to be brought into the building and to exclude from the building all freight which violates any of these Rules and Regulations of the lease or which these Rules and Regulations are a part.

9. Canvassing, soliciting and peddling in the building is prohibited and each Tenant shall cooperate to prevent the same.

10. Owner reserves the right to exclude from the building all persons who do not present a pass to the building signed by Owner. Owner will furnish passes to persons for whom any Tenant requests same in writing. Each Tenant shall be responsible for all persons for whom he requests such pass and shall be liable to Owner for all acts of such persons. Tenant shall not have a claim against Owner by reason of Owner excluding from the building any person who does not present such pass.

11. Owner shall have the right to prohibit any advertising by any Tenant which in Owner's opinion, tends to impair the reputation of the building or its desirability as a building for offices, and upon written notice from Owner, Tenant shall refrain from or discontinue such advertising.

12. Tenant shall not bring or permit to be brought or kept in or on the demised premises, any inflammable, combustible, explosive, or hazardous fluid, material, chemical or substance, or cause or permit any odors of cooking or other processes, or any unusual or other objectionable odors to permeate in or emanate from the demised premises.

13. If the building contains central air conditioning and ventilation, Tenant agrees to keep all windows closed at all times and to abide by all rules and regulations issued by Owner with respect to such services. If Tenant requires air conditioning or ventilation after the usual hours, Tenant shall give notice in writing to the building superintendent prior to 3:00 p.m., in the case of services required on week days, and prior to 3:00 p.m. on the day prior in case of after hours service required on weekends or on holidays. Tenant shall cooperate with Owner in obtaining maximum effectiveness of the cooling system by lowering and closing venetian blinds and/or drapes and curtains when the sun's rays fall directly on the windows of the demised premises.

14. Tenant shall not move any safe, heavy machinery, heavy equipment, bulky matter, or fixtures into or out of the building without Owner's prior written consent. If such safe, machinery, equipment, bulky matter or fixtures requires special handling, all work in connection therewith shall comply with the Administrative Code of the City of New York and all other laws and regulations applicable thereto and shall be done during such hours as Owner may designate.

15. Refuse and Trash. (1) Compliance by Tenant. Tenant covenants and agrees, at its sole cost and expense, to comply with all present and future laws, orders, and regulations of all state, federal, municipal, and local governments, departments, commissions and boards regarding the collection, sorting, separation and recycling of waste products, garbage, refuse and trash. Tenant shall sort and separate such waste products, garbage, refuse and trash into such categories as provided by law. Each separately sorted category of waste products, garbage, refuse and trash shall be placed in separate receptacles reasonably approved by Owner. Such separate receptacles may, at Owner's option, be removed from the demised premises in accordance with a collection schedule prescribed by law. Tenant shall remove, or cause to be removed by a contractor acceptable to Owner, at Owner's sole discretion, such items as Owner may expressly designate. (2) Owner's Rights in Event of Noncompliance. Owner has the option to refuse to collect or accept from Tenant any waste products, garbage, refuse or trash (a) that is not separated and sorted as required by law or (b) which consists of such items as Owner may expressly designate for Tenant's removal, and to require Tenant to arrange for such collection at Tenant's sole cost and expense, utilizing a contractor satisfactory to Owner. Tenant shall pay all costs, expenses, fines, penalties, or damages that may be imposed on Owner or Tenant by reason of Tenant's failure to comply with the provisions of this Building Rule 15, and, at Tenant's sole cost and expense, shall indemnify, defend and hold Owner harmless (including reasonable legal fees and expenses) from and against any actions, claims and suits arising from such noncompliance, utilizing counsel reasonably satisfactory to Owner.

The Real Estate Board of New York, Inc.
© Copyright 1994. All Rights Reserved.
Reproduction in whole or in part prohibited.

STANDARD FORM OF
### Office Lease

Address ....................................
Premises ....................................
TO ....................................

Dated .................... 19 ......

Rent Per Year ....................................
Rent Per Month ....................................

Term
From ....................................
To ....................................

Drawn by ....................................
Checked by ....................................
Entered by ....................................
Approved by ....................................

## TABLE OF CONTENTS
### TO RIDER

| | | |
|---|---|---|
| 37. | CONFLICTS | 1 |
| 38. | TERM; RENTAL | 1 |
| 39. | ADDITIONAL RENT | 2 |
| 40. | USE | 5 |
| 41. | AS-IS CONDITION | 5 |
| 42. | TENANT'S CHANGES | 5 |
| 43. | HAZARDOUS MATERIALS; ADA; CLASS E SYSTEM | 8 |
| 44. | ELECTRICITY | 9 |
| 45. | HEAT AND AIR-CONDITIONING | 12 |
| 46. | LANDLORD'S OTHER SERVICES | 13 |
| 47. | CLEANING | 13 |
| 48. | ASSIGNMENT AND SUBLETTING | 14 |
| 49. | INSURANCE | 20 |
| 50. | SUBORDINATION | 22 |
| 51. | FURTHER PROVISIONS AS TO DEFAULT | 23 |
| 52. | SECURITY DEPOSIT | 24 |
| 53. | ARBITRATION | 26 |
| 54. | ESTOPPEL CERTIFICATES | 27 |
| 55. | BROKER | 27 |
| 56. | HOLDING OVER | 27 |
| 57. | NOTICES | 28 |
| 58. | THE LOWER MANHATTAN PLAN | 28 |
| 59. | ICIP | 30 |
| 60. | MISCELLANEOUS | 31 |
| 61. | LOWER MANHATTAN ELECTRICAL PLAN | 33 |

INPUT INTO
1121  12/30/03  12:05PM

RIDER CONTAINING

ADDITIONAL CLAUSES ATTACHED TO AND FORMING

A PART OF LEASE DATED AS OF DECEMBER 9th, 2003, BY AND BETWEEN

W12/14 WALL REALTY, LLC

AS LANDLORD,

AND

MORGAN FUNDING, INC., AS TENANT.

37.    **CONFLICTS:** In the event of any conflict between the provisions of this Rider and the printed portion of this lease, the provisions of this Rider shall control.

38.    **TERM; RENTAL:**

A.    The term of this lease for which the demised premises are hereby leased, shall commence on March 1, 2006 (hereinafter referred to as the **"Commencement Date"**), and shall expire on November 30, 2008 (hereinafter referred to as the **"Expiration Date"**), or shall expire on such earlier date upon which said term may expire or be cancelled or terminated pursuant to any of the conditions or covenants of this lease or pursuant to law.

B.    The **"rents"** reserved under this lease, for the term thereof, shall be and consist of:

(a)    **"fixed rent"** of:

(i)    $245,353.68 per year ($20,446.14 per month) for the period (the **"First Rent Period"**) commencing on the Commencement Date and ending on the last day of the calendar month immediately preceding the calendar month in which occurs the first (1st) anniversary of the Commencement Date, both dates inclusive;

(ii)    $249,810.75 per year ($20,817.56 per month) for the one (1) year period (the **"Second Rent Period"**) commencing on the date next succeeding the last day of the First Rent Period; and

(iii)    $254,356.97 per year ($21,196.41 per month) for the period (the **"Third Rent Period"**) commencing on the date next succeeding the last day of the Second Rent Period and continuing thereafter through the remainder of the initial term of this lease,

all of which Tenant covenants and agrees to pay in equal monthly installments in advance of the first day of each and every calendar month during the term of this lease, except that on or before February 1, 2006, Tenant shall pay the sum of $20,446.14, to be applied against the first monthly installment(s) of fixed rent becoming due under this lease; and

(b)    **"additional rent"** consisting of all such other sums of money as shall become due from and payable by Tenant to Landlord hereunder (for default in payment of which Landlord shall have the same remedies as for a default in payment of fixed rent),

all to be paid to Landlord at its office, or such other place, or to such agent and at such place, as Landlord may designate by notice to Tenant, in lawful money of the United States of America. In the event that Tenant is in arrears in payment of fixed rent or additional rent hereunder, Tenant waives Tenant's right, if any, to designate the items against which any payments made by Tenant are to be credited, and Tenant agrees that Landlord may apply any payments made by Tenant to any items it sees fit, irrespective of and notwithstanding any designation or request by Tenant as to the items against which any such payments shall be credited.

C.     Tenant shall pay the fixed rent and additional rent herein reserved promptly as and when the same shall become due and payable, without demand therefor and without any abatement, deduction or set-off whatsoever except as expressly provided in this lease.

D.     If the Commencement Date occurs on a day other than the first day of a calendar month, the fixed rent for such calendar month shall be prorated and the balance of the first month's fixed rent theretofore paid shall be credited against the next monthly installment of fixed rent.

E.     Each and every covenant contained in this Article shall be deemed separate and independent, and not dependent on any other term of this lease for the use and occupancy of the demised premises by Tenant, and the performance of any such term shall not be considered to be for rent or other payment for use of the demised premises. It is understood that the consideration for the covenants in this Article is the making of this lease, and the damages for failure to perform same shall be in addition to and separate and independent of the damages accruing by reason of default in observing any other term of this lease.

F.     (a)     Tenant shall pay to Landlord annually, commencing in the calendar year of the term hereof next succeeding the year in which the Commencement Date shall occur, as additional rent, within ten (10) days after receipt of a statement from Landlord, an amount equal to Tenant's Proportionate Share of the aggregate costs and expenses (hereinafter referred to as "Compliance Costs") incurred by Landlord during the immediately preceding calendar year for repairs, replacements, improvements or alterations (in each such case, hereinafter referred to as a "Compliance Change") which are either necessary or, in Landlord's good faith judgment, reasonably required, to keep the Building and land in compliance with all laws and/or requirements of any public authorities and/or the requirements of insurance bodies or insurance rating organizations. For the purposes of this Section, Compliance Costs will be determined as follows:

(i)     for Compliance Changes which are capital in nature, the amount included in a particular calendar year shall be determined by using the amortized cost of each such capital Compliance Change over its estimated useful life (determined by Landlord in accordance with generally accepted accounting principles) with interest on the unamortized cost of such capital Compliance Change at a rate equal to two (2) percentage points above the Prime Rate; and

(ii)     for non-capital Compliance Changes, the total cost and expenses incurred by Landlord within a given calendar year shall be included in the Compliance Costs for such calendar year.

(b) .     If the first or last year of the term of this lease shall constitute a period of less than a full calendar year, the additional rent payable under this Section for such calendar year(s) shall be prorated. The obligation of Tenant to pay such additional rent provided in this Section shall survive the expiration or sooner termination of the term of this lease.

39.     **ADDITIONAL RENT :**

A.     For purposes of Sections A-E of this Article:

(a)     "Taxes" shall mean the real estate taxes, assessments and special assessments imposed upon the Building and the land on which the Building is situated (hereinafter called the "land"). If at any time after the date of this lease, the methods of taxation prevailing on the Commencement Date shall be altered so that, in lieu of, as an addition to, or as a substitute for the whole or any part of the taxes, assessments, levies, impositions, or charges now levied, assessed, or imposed on real estate and the improvements thereon, there shall be levied, assessed or imposed (i) a tax, assessment, levy, imposition, or charge wholly or partially as a capital levy or otherwise on the rents received therefrom, (ii) a tax, assessment, levy, imposition, or charge measured by, or based in whole or in part upon, the demised premises and imposed upon Landlord, or (iii) a license fee measured by the rents payable by Tenant to Landlord, then all such taxes, assessments, levies, impositions, or charges, or the part thereof so measured or based, shall be deemed to be included within the term Taxes for the purposes hereof. "Taxes" shall also include all costs and expenses incurred or paid by Landlord in connection with the ICIP (as defined in Article 60 below).

(b)    **"Tax Year"** shall mean the fiscal year for which Taxes are levied by the governmental authority.

(c)    **"Base Taxes"** shall mean the Taxes for the Base Tax Year, as finally determined.

(d)    **"Base Tax Year"** shall mean the 2003/2004 Tax Year.

(e)    **"First Tax Year"** shall mean the Tax Year immediately succeeding the Base Tax Year.

(f)    **"Tenant's Proportionate Share"** shall mean .81%.

(g)    **"Tax Payment"** shall mean Tenant's Proportionate Share multiplied by the amount, if any, by which the Taxes for the subject Tax Year exceeds the Base Taxes, but in no event shall the Tax Payment be less than zero.

(h)    **"Tenant's Projected Tax Payment"** shall mean for the First Tax Year, 10% of the Base Taxes, multiplied by Tenant's Proportionate Share, and for the immediately following Tax Year and each and every Tax Year thereafter, 110% of the Tax Payment for the Tax Year immediately preceding the subject Tax Year, which Tenant's Projected Tax Payment shall be applied to the Tax Payment for the subject Tax Year, as more particularly provided in subsection B(b) below.

B.    (a)    Commencing with the First Tax Year, and continuing thereafter throughout the balance of the term of this lease, Tenant shall pay, as additional rent, the Tax Payment for such Tax Year and for each and every Tax Year thereafter that occurs (in whole or in part) during the term of this lease, as more particularly provided in subsection C(a) below.

(b)    On account of Tenant's obligations to pay the Tax Payment, commencing on the later of the Commencement Date and July 1, 2003 (i.e., the first (1st) day of the Base Tax Year), and continuing thereafter throughout the balance of the term of the this lease, Tenant shall pay, in equal monthly installments, the Tenant's Projected Tax Payment for the First Tax Year and for each and every Tax Year thereafter that occurs (in whole or in part) during the term of this lease. Tenant's Projected Tax Payment(s) shall be set forth in a statement furnished to Tenant, which statement shall be accompanied by a copy of the tax bill for the Tax Year immediately preceding the subject Tax Year and shall set forth Landlord's calculation of the Tenant's Projected Tax Payment for the subject Tax Year. As of the first (1st) day of each and every Tax Year occurring during the term of this Lease, the Tenant's Projected Tax Payment shall be adjusted. However, if Tenant has not been furnished with the statement described above prior to the first (1st) day of the Tax Year in question, then Tenant shall continue to pay the Tenant's Projected Tax Payment for the immediately preceding Tax Year until such time as Tenant is furnished with a new statement. Thereafter, commencing on the first (1st) day of the first calendar month immediately succeeding the date Tenant is furnished with the new statement, the Tenant's Projected Tax Payment shall be adjusted and Tenant shall pay same in accordance with such statement until it is again furnished with a new statement. In addition, on such first (1st) day of said first calendar month, Tenant shall pay in a lump sum, retroactive to the first (1st) day of the Tax Year, the difference between (A) the Tenant's Projected Tax Payment that would have been payable had Tenant been furnished with a statement prior to the first (1st) day of the Tax Year, and (B) the amount of Tenant's Projected Tax Payments actually paid for such period, all as set forth in the statement.

C.    (a)    After Landlord receives the tax bill for the subject Tax Year, Tenant shall be furnished with a statement, which statement shall be accompanied by the tax bill for the subject Tax Year and shall set forth the Tax Payment for the subject Tax Year; the amount of Tenant's Projected Tax Payments paid by Tenant for the subject Tax Year; the amount of any overpayment or underpayment of the Tax Payment (i.e., the difference between the Tax Payment and the amount of Tenant's Projected Tax Payment paid by Tenant); and Landlord's calculation of the Tenant's Projected Tax Payment for the next Tax Year, which Tenant's Projected Tax Payment shall be paid in accordance with Section B above. If such statement indicates an underpayment of the Tax Payment, Tenant shall pay to Landlord the amount of the underpayment within ten (10) days after it is furnished with such statement. If such statement indicates an overpayment of the Tax Payment, and Tenant is not then in default under this lease,

then Landlord, at Landlord's option, shall either refund promptly the overpayment to Tenant, or apply the overpayment to the next installment(s) of the Tenant's Projected Tax Payment due under this Lease.

(b)    Each statement furnished under this Section C and Section B above is hereinafter called a **"Tax Statement."** Every Tax Statement furnished to Tenant shall be conclusive and binding upon Tenant, unless Tenant shall notify Landlord within thirty (30) days after its receipt of such statement that it disputes the correctness of the computations made therein, specifying the particular respects in which such computations are claimed to be incorrect. Pending the resolution of such dispute, Tenant shall pay any additional rent due in accordance therewith, but such payment shall be without prejudice to Tenant's position. If the dispute shall be resolved in Tenant's favor, Landlord shall, within ten (10) days after Tenant's demand therefor, pay Tenant the amount of Tenant's overpayment of additional rents, if any, resulting from compliance with the disputed Tax Statement.

D.    (a)    Notwithstanding the fact that the Tax Payment is measured by an increase in real estate taxes, such increase is additional rent and shall be paid by Tenant as herein provided regardless of the fact that Tenant may be exempt, in whole or in part, from the payment of any taxes by reason of Tenant's diplomatic or other tax exempt status or for any other reason whatsoever.

(b)    In no event whatsoever shall the fixed rent be reduced below the fixed rent initially set forth in Section 38B.

(c)    In the event that the holder of any superior mortgage or the lessor of any superior lease (as such terms are defined in Article 50 hereof) shall require advance payments from Landlord on account of Taxes, then Tenant will pay Tenant's Proportionate Share of any amounts required to be paid in advance by Landlord with the holder of the superior mortgage or the lessor of the superior lease to the extent that such payments made by Landlord exceed the Base Taxes. Any payments to be made by Tenant under this subsection (c) shall be made ten (10) days prior to the date Landlord is required to make such payments to the holder of the superior mortgage or the lessor of the superior lease.

E.    Only Landlord shall be eligible to institute tax reduction or other proceedings to reduce Taxes. If Landlord is successful in any such reduction proceedings and obtains a refund or a reduction in Taxes for periods during which Tenant has paid or is obligated to pay a Tax Payment, then, after deducting its expenses, including without limitation, attorneys' fees and disbursements in connection with such refund, reduction or other benefit to Tenant, and provided further that Tenant has not been in default under any of the terms, covenants or conditions in this lease on Tenant's part to observe, perform or comply with for the preceding twelve (12) month period, either (a) Landlord shall return Tenant's Proportionate Share of such refund to Tenant or, (b) if a reduction in Taxes is obtained prior to the date Tenant is required to pay the Tax Payment, the Taxes for the subject Tax Year shall be deemed reduced by such reduction.

F.    Landlord's failure to prepare and deliver any of the Tax Statements, other notices, statements or bills set forth in this Article, or Landlord's failure to make a demand, shall not in any way cause Landlord to forfeit or surrender its rights to collect any of the foregoing items of additional rent that may have become due during the term of this lease. Tenant's liability for the amounts due under this Article shall survive the expiration of the term hereof, and any amount due for a partial period between the expiration of a Tax Year and the Expiration Date shall be prorated.

G.    Anything contained in this Article to the contrary notwithstanding, in no event whatsoever shall the fixed rent be reduced below the fixed rent initially set forth in Section 38B hereof as same may be increased by provisions of this lease other than by this Article. The amounts payable pursuant to this Article shall be prorated, if necessary, to correspond with that portion of a Tax Year occurring within the term of this lease.

H.    Tenant shall pay the additional rent herein reserved promptly as and when the same shall become due and payable, without demand therefor and without any abatement, deduction or setoff whatsoever except as expressly provided in this lease.

40.  USE:

A.   (a)   Tenant shall use and occupy the demised premises for executive and general offices for the transaction of Tenant's business, which is providing financial services, and for no other purpose, to the extent such use is permitted by the certificate of occupancy for the Building (if any), Tenant hereby acknowledging that Landlord has made no representation or warranty as to whether such use is so permitted or otherwise permitted or whether the demised premises are suitable for such use.

(b)   Notwithstanding anything in this lease to the contrary, the Tenant covenants and agrees that during the term of this Lease, it will not use the demised premises or any part thereof, or permit the demised premises or any part thereof to be used (i) for banking, trust company or safe deposit business; (ii) as or by a commercial or savings bank, a trust company, a savings and loan association, a loan company, or a credit union; (iii) for the sale of travelers checks, money orders and/or foreign exchange; (iv) as a restaurant and/or bar and/or for the sale of soda and/or beverage and/or sandwiches and/or ice cream and/or baked goods; (v) by the United States Government, the City or State of New York, any foreign government, the United Nations or any agency or department of any of the foregoing, or any other person or entity having sovereign or diplomatic immunity; (vi) as an employment agency, search firm or similar enterprise, school or vocational training center (except for the training of employees of the Tenant intended to be employed at the demised premises); (vii) as a barber shop or beauty salon; (viii) as a diagnostic medical center and/or for the practice of medicine; or (ix) any use which is prohibited under an existing lease for space in the Building.

B.   If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business in the demised premises, or any part thereof, Tenant, at its expense, shall duly procure and thereafter maintain such license or permit and submit the same for inspection by Landlord. Tenant shall at all times comply with the terms and conditions of each such license or permit.

C.   Tenant shall not at any time use or occupy, or suffer or permit anyone to use or occupy, the demised premises, or do or permit anything to be done in the demised premises, in violation of the Certificate of Occupancy for the demised premises or for the Building or in violation of any superior mortgage or superior lease.

41.  AS-IS CONDITION:

A.   Tenant acknowledges that it has made a full and complete inspection of the demised premises, and Tenant agrees to accept same on the Commencement Date in their present "as-is" condition. Tenant acknowledges that neither Landlord, nor Landlord's agent, has made any representations or promises in regard to the demised premises. The opening for business by Tenant in the demised premises shall be conclusive evidence as against Tenant that the demised premises were in good and satisfactory condition at the time such possession was taken. Tenant's failure, refusal or inability to open for business in the demised premises shall not be deemed evidence that the demised premises were not in good or satisfactory condition.

B.   Any installations, materials and work which may be undertaken by or for the account of Tenant to equip, decorate and furnish the demised premises for Tenant's initial occupancy thereof (hereinafter referred to as "Tenant's Work") shall be performed by Tenant, at Tenant's sole cost and expense in accordance with the terms, covenants and conditions set forth in this lease, including, without limitation, Article 42 hereof.

42.  TENANT'S CHANGES:

A.   Tenant shall make no changes in or to the demised premises of any nature without Landlord's prior written consent in each instance, except as otherwise expressly permitted in this Article.

B.   With Landlord's prior written consent in each instance, which consent shall not be unreasonably withheld or delayed, Tenant may, from time to time during the term of this lease, at its sole expense, make such alterations, additions, installations, substitutions, improvements and decorations (hereinafter collectively called "Nonstructural Changes") in and to the interior of the demised premises that are not structural in nature, that do not result in, or require, an

amendment to, or modification of, the certificate of occupancy for the Building, and that do not otherwise affect the structural parts or integrity of the Building and do not affect any of the Building's utilities, systems or services, as Tenant may reasonably consider necessary for the conduct of its business therein, on the following conditions:

(a)    the outside appearance or strength of the Building shall not be affected;

(b)    no part of the Building outside of the demised premises shall be physically affected; and

(c)    the proper functioning of any of the mechanical, electrical, sanitary and other service systems of the Building shall not be adversely affected, and the usage of such systems by Tenant shall not be increased.

C.    Tenant shall not make any alterations, additions, installations, substitutions, improvements or decorations (hereinafter collectively referred to as **"Structural Changes"**) (i) outside the demised premises; (ii) in or to the exterior of the demised premises; (iii) in or to the interior demised premises that are structural in nature or that otherwise affect the structural integrity or parts of the Building or that affect any of the Building's utilities, systems or services, or (iv) which result in, or require, an amendment to, or modification of, the certificate of occupancy for the Building, without Landlord's prior written approval in each instance, which approval may be withheld by Landlord in its absolute and sole discretion.

D.    Nonstructural Changes and/or Structural Changes (collectively, **"Changes"**) shall only be performed in accordance with and subject to, this Article and the other applicable provisions of this lease.

E.    Before commencing any Change (except for decorations that are Nonstructural Changes), Tenant, at its sole cost and expense, shall prepare and submit to Landlord for Landlord's approval, reasonably detailed plans and specifications therefor (such reasonably detailed plans and specifications being herein referred to as **"Tenant's Plans"**), which approval shall not be unreasonably withheld or delayed for any Nonstructural Changes described therein. The cost and expense reasonably incurred and/or paid by Landlord in connection with the review of the Tenant's Plans (and all revisions thereto), and the inspection of the work in respect thereof, by Landlord and Landlord's architects, engineers and other consultants and professionals shall be reimbursed by Tenant to Landlord (as additional rent) within ten (10) days after Landlord's demand therefor, Tenant hereby agreeing that neither Landlord's approval of the Tenant's Plans (or any revisions thereto), nor its inspection of such work, nor its right to inspect such work, shall impose upon Landlord any obligation or liability whatsoever with respect thereto, including, without limitation, any obligation or liability that might arise as a result of such work not being performed in accordance with applicable laws and requirements or with the Tenant's Plans (and revisions thereto) approved by Landlord or otherwise. Landlord may, as a condition of its approval, require Tenant to make revisions in and to the plans and specifications and to post a bond or other security reasonably satisfactory to Landlord to insure the completion and payment of the Change in question. Any Tenant's Plans (and all revisions thereto) and any requests for all permits, notice, approvals and certificates in connection with any Change required by, to be submitted to, or filed with, any governmental or quasi-governmental agency for the commencement or prosecution of such Changes, and for the final inspection and approval of such Changes shall be submitted or filed only by an expediter or consultant designated by Landlord, at Tenant's sole cost and expense. The failure by Tenant to use such expediter or consultant shall be a material default under this lease. Tenant shall not use, employ or retain any contractor or mechanic, or permit the use, employment or retention of any subcontractor, that has not been first approved by Landlord, which approval shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, for all Changes (including all Tenant's Work) involving electrical equipment or wiring, heating, ventilation and/or air-conditioning systems or equipment, plumbing equipment or systems or Class E (or other fire and life safety) equipment or systems, Tenant may only use contractors and subcontractors designated by Landlord.

F.    Before commencing any Change, Tenant shall, at its expense, obtain all permits, notices, approvals and certificates required by all governmental and quasi-governmental authorities for the commencement and prosecution of such Changes, and, upon completion, for the final approval of such Changes, and shall cause Tenant's Changes to be performed in compliance therewith, as well as with all applicable laws and requirements of public authorities

and all applicable requirements of insurance bodies, in a good and workmanlike manner, using new materials and equipment of a quality and class at least equal to the original installations in the Building.    Duplicates of all such permits, notices, approvals and certificates shall be delivered to Landlord before commencing such Changes, and upon the completion thereof, as the case may be.    Changes shall be performed in such a manner as not to unreasonably interfere with or delay, and (unless Tenant shall indemnify Landlord therefor to the Landlord's reasonable satisfaction) as not to impose any additional expense upon Landlord in, the maintenance or operation of the Building.    Throughout the performance of all Changes, Tenant shall, at its expense, carry, or cause to be carried, worker's compensation insurance in statutory limits and general liability insurance and personal and property damage insurance for any occurrence in or about the Building as set forth in Article 49 of this lease.    All such insurance policies shall name Landlord and its agents, as parties insured, be in such limits as Landlord may reasonably prescribe and be placed with insurers reasonably satisfactory to Landlord.    Tenant shall furnish Landlord with satisfactory evidence that such insurance is in effect before the commencement of any Changes and, on request, at reasonable intervals thereafter during the continuance of the Changes.    If any Changes shall involve the removal of any fixtures, equipment, or other property in the demised premises, such fixtures, equipment, or other property shall be promptly replaced, at Tenant's expense, with new fixtures, equipment, or other property (as the case may be) of like utility and at least equal value unless Landlord shall otherwise expressly consent in writing, and Tenant shall, upon Landlord's request, deliver to Landlord any such fixtures, equipment, or property so removed.    Any such fixtures, equipment so removed that Landlord does not request to be delivered to Landlord shall be discarded and removed from the Building by Tenant at Tenant's sole cost and expense.

      G.    Tenant shall defend, indemnify and save Landlord harmless from and against (a) all mechanic's and other liens filed, and (b) all violations issued by the Department of Buildings or any other public or quasi-public authority having or asserting jurisdiction, in connection with or arising from, or otherwise connected with, any Changes (including Tenant's Work) or any other work claimed to have been done for, or materials furnished to, Tenant or any Tenant Party, whether or not done or furnished pursuant to this Article, including, without limitation, the liens of any security interest in, conditional sales of, or chattel mortgages upon, any materials, fixtures or articles so installed in and constituting part of the demised premises, and against all costs, expenses and liabilities incurred or paid in connection with any such lien, violation, security interest, conditional sale, or chattel mortgage or any action or proceeding brought thereon. Tenant, at its expense, shall satisfy, cancel or discharge all such liens and violations, and remove same from the record, within fifteen (15) days after Landlord makes written demand therefor; provided, however, that the granting of such fifteen (15) days shall not effect Tenant's other obligations and liabilities under this lease, including the indemnification obligation set forth in this Section.

      H.    No Change shall be done in a manner that would:  (i) create any work stoppage, picketing, labor disruption, or dispute; (ii) violate Landlord's union contracts affecting the land and/or Building; or (iii) interfere with the business of Landlord or any tenant or occupant of the Building.  In the event of the occurrence of any condition described above arising from Tenant's exercise of any of its rights pursuant to the provisions of this Article, Tenant shall, immediately upon notice from Landlord, cease the manner of exercise of such right giving rise to such condition.  In the event that Tenant fails to cease such manner of exercise of its rights as aforesaid, Landlord, in addition to any rights available to it under this lease, at law or equity, and shall have the right to injunction without notice.  Tenant shall make all arrangements for, and pay all expenses incurred in connection with, use of the freight elevators servicing the demised premises.

      I.    All fixtures and all paneling, partitions, railings and like installations, installed in the demised premises at any time, either by Tenant or by Landlord on Tenant's behalf, shall, upon installation, become the property of Landlord and shall remain upon and be surrendered with the demised premises unless Landlord, by notice to Tenant elects to relinquish Landlord's right thereto and to have them removed by Tenant, in which event the same shall be removed from the demised premises by Tenant prior to the expiration or sooner termination of this lease, at Tenant's expense.  Nothing in this paragraph shall be construed to give Landlord title to or to prevent Tenant's removal of trade fixtures, moveable office furniture and equipment, but upon removal of any of such from the demised premises or upon removal of other installations as may be required by Landlord, Tenant shall immediately and at its expense, repair and restore the demised premises to the condition existing prior to installation, and repair any damage to the

demised premises or the Building due to such removal. All property permitted or required to be removed by Tenant at the end of the term of this lease that remains in the demised premises shall be deemed abandoned and may, at the election of Landlord, either be retained as Landlord's property or removed from the demised premises by Landlord, at Tenant's expense.

43.    **HAZARDOUS MATERIALS; ADA; FIRE SYSTEM:**

A.    (a)    Tenant shall not cause or permit **"Hazardous Materials"** (as defined below) to be used, transported, stored, released, handled, produced or installed in, on or from the demised premises or the Building. The term **"Hazardous Materials"** shall, for the purposes hereof, mean any flammable, explosive or radioactive materials, hazardous wastes, hazardous and toxic substances or related materials, asbestos or any material containing asbestos, or any other substance or material, as now or hereafter defined as a hazardous material or a hazardous substance by any federal, state or local law, ordinance, rule or regulation, now or at any time hereafter in effect, including, without limitation, the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended, the Hazardous Materials Transportation Act, as amended, the Resource Conservation and Recovery Act, as amended, and in the regulations adopted and publications promulgated pursuant to each of the foregoing. In the event of a breach of the provisions of this Article, Landlord shall, in addition to all of its rights and remedies under this lease and pursuant to law, require Tenant to remove any or all of such Hazardous Materials from the demised premises or the Building in the manner prescribed for such removal by all requirements of law. Except as set forth in clause (b) below, Tenant acknowledges that Landlord has made no representation, warranty, covenant or agreement with respect to the existence, removal, encapsulation or other treatment or remediation of Hazardous Materials, and, except as set forth in clause (b) below, that Landlord shall not in any way be liable for the existence of any Hazardous Materials or be obligated to remove, encapsulate or otherwise treat or remediate same. The provisions of this Article shall survive the expiration or sooner termination of this lease.

(b)    Notwithstanding anything in this Lease to the contrary, unless introduced into the demised premises by Tenant, to the extent that on the Commencement Date there exists in the demised premises any material that (i) on or after the Commencement Date is a Hazardous Material, and (ii) on or after the Commencement Date requires removal from the demised premises or other remediation pursuant to any applicable law in effect on or after the Commencement Date, then, as Landlord's sole obligation and liability, Landlord, at its expense, shall remove or remediate same to the extent required by applicable law, provided applicable law requires removal to take place during the term of this Lease. Notwithstanding the foregoing, Landlord shall have no responsibility with respect to the removal or other remediation of any material that does not exist in the demised premises on the Commencement Date and is not introduced into the demised premises by Landlord, its contractors, employees, agents or representatives.

B.    Within ten (10) days after receipt, Tenant shall advise Landlord in writing, and provide Landlord with copies of, any notices alleging violations of the provisions of the Americans With Disabilities Act of 1990 and any municipal laws, ordinances and rules of like import, and any regulations adopted and amendments promulgated pursuant to any of the foregoing (hereinafter to collectively as the **"ADA"**) relating to any portion of the Demised Premises; any claims made or threatened in writing regarding non-compliance with the ADA and relating to any portion of the Demised Premises; or any governmental or regulatory actions or investigations instituted or threatened regarding non-compliance with the ADA, and relating to any portion of the Demised Premises. Landlord agrees that Tenant shall have no obligation to cause the public lavatories or the public hallways on the floor of the Building containing the Demised Premises to be in compliance with the ADA, and Landlord shall be solely responsible for such compliance. In addition, without Landlord's prior written consent in each instance, no portion of the demised premises shall be used in any manner, and no Changes shall be performed, if such manner of use or such Changes requires that any alterations, changes, additions, improvements or other work be performed or made to any portions of the Building or the land outside the demised premises, which consent may be withheld by Landlord in its sole and absolute discretion. If Landlord gives its consent for such manner of use or Changes, then, Landlord, at Tenant's sole cost and expense, shall perform or make such alterations, changes, additions, improvements or other work, and Tenant shall pay to Landlord as additional rent the cost and expense incurred or paid by Landlord to perform or make same, within ten (10) days after Landlord's demand therefor, which demand shall be accompanied by a reasonably detailed

statement of the alterations, changes, additions, improvements or other work so performed or made and the cost and expense incurred or paid by Landlord.

C.    Notwithstanding anything to the contrary contained in this lease, Tenant, at its sole cost and expense, shall maintain the fire alarm and life safety system (the "Fire System") within the Demised Premises in compliance with all laws and/or requirements of public authorities and all requirements of insurance bodies.  Landlord shall have no obligation whatsoever in connection with the Fire System within the Demised Premises.  Landlord's fire alarm system contractor for the Building shall provide the necessary service to repair and maintain Tenant's Fire System in the Demised Premises and Tenant shall pay to Landlord, within ten (10) days after Landlord's written demand as additional rent, the reasonable monthly cost of providing such service to the Demised Premises.

D.    Notwithstanding anything to the contrary contained in this lease, Tenant, at its sole cost and expense and in accordance and in compliance with all applicable laws and/or requirements of public authorities and all requirements of insurance bodies, shall perform any sprinkler work in or to the Demised Premises that is required under the applicable laws and/or requirements of public authority (including the Building Code of the City of New York) and all requirements of insurance bodies to occupy the Demised Premises for the purposes permitted under this lease, and thereafter maintain the sprinkler system within the Demised Premises in compliance with all laws or requirements of public authorities and all requirements of insurance bodies.  Landlord shall have no obligation whatsoever in connection with any sprinkler system compliance or otherwise in connection with the sprinkler system within the Demised Premises.

44.    **ELECTRICITY:**

A.    Subject to the terms of Section C of this Article, during the term of this lease Landlord shall furnish electrical service to the demised premises, for lighting the same and for the operation of normal office equipment (such as personal computers and printers, photocopying machines and telephone facsimile machines) therein.  Except as provided to the contrary in Sections C, G, H and I of this Article, such electrical service shall be furnished without specific measurement, on any meter or otherwise, and without additional specific charge to Tenant, the charge for the furnishing of such electrical service being included in the fixed rent reserved under this lease, subject to adjustment as hereinafter provided.  Notwithstanding the foregoing, however, Tenant agrees that Landlord shall not in any wise be liable or responsible to Tenant for any loss, damage, or expense that Tenant may sustain or incur if either the quantity or character of electrical service is changed, is no longer available, or is unsuitable for Tenant's requirements.  At Landlord's option, Tenant shall purchase from Landlord or its agent all lamps, starters, ballasts, or bulbs used in the demised premises.

B.    Tenant covenants and agrees that, at all times, its use of electric current shall never exceed the capacity of the feeders to the Building or the risers or wiring installation thereof.  In connection therewith, Tenant expressly agrees that all installations, alterations and additions of and to the electrical fixtures, appliances, or equipment within the demised premises shall be subject to Landlord's prior written approval, and, if such approval shall be given, rigid conduit only shall be permitted.  If, in connection with any request for such approval, Landlord shall, in its sole judgment, determine that the risers of the Building servicing the demised premises shall be insufficient to supply Tenant's electrical requirements with respect thereto, Landlord shall, at the sole cost and expense of Tenant, install any additional feeder(s) that Landlord shall deem necessary with respect thereto, provided, however, that, if Landlord shall determine, in its sole judgment, that the same will cause permanent damage or injury to the Building or to the demised premises, cause or create a dangerous or hazardous condition, entail excessive or unreasonable alterations, repairs, or expense, or interfere with, or disturb, the other tenants or occupants of the Building, , or adversely affect Landlord's ability to supply or furnish electricity to other portions of the Building at any time during the term of this lease, then Landlord shall not be obligated to make such installation, and Tenant shall not make the installation, alteration, or addition with respect to which Tenant requested Landlord's consent. In addition to the installation of such riser or risers, Landlord will also, at the sole cost and expense of Tenant, install all other equipment necessary and proper in connection therewith, subject to the aforesaid terms and conditions.  All of the aforesaid costs and expenses are chargeable and collectible as additional rent, and shall be paid by Tenant to Landlord within ten (10) days after rendition of any bill or statement to Tenant therefor.

Bavarv:01\SECALL\01345?v03\im8050.DOC\12/5\0703199.011000

C.    Provided that it is physically possible for Tenant to receive electric current in the demised premises directly from the utility company serving the area in which the Building is located, Landlord may discontinue the aforesaid service upon thirty (30) days' notice to Tenant without being liable to Tenant therefor and without in any way affecting this lease or the liability of Tenant hereunder, and the same shall not be deemed to be a lessening or diminution of services within the meaning of any law, rule, or regulation now or hereafter enacted, promulgated, or issued. In the event that Landlord gives such notice of discontinuance, Landlord shall permit Tenant to receive such service directly from such utility company and shall permit Landlord's wires and conduits, to the extent available, suitable and safely capable, to be used for such purpose. Any additional wires, conduits, or other equipment necessary and proper in connection therewith shall be installed by Landlord in accordance with the terms of, and subject to the conditions contained in, Section B of this Article. In the event that Landlord exercises its rights under this Section C, then: (i) Tenant shall contract for such electrical service directly with the said utility for all of Tenant's electric current requirements and (ii) as of the date upon which Landlord discontinues furnishing electric current to Tenant, the fixed rent reserved under this lease shall be reduced by $22,500.00 per year ($1,875.00 per month) (the "**Initial Electricity Factor**"), as the Initial Electricity Factor may have been increased in accordance with the provisions of Sections D, E or F of this Article. The Initial Electricity Factor, as the same may, from time to time hereafter, be increased in accordance with the provisions of Sections D, E or F of this Article, is hereinafter called the "**Electricity Factor.**"

D.    (a)    At any time after the Commencement Date, Landlord may engage an independent electrical engineer or electrical consulting firm (hereinafter called "**Landlord's Consultant**") to make a survey (hereinafter called the "**Initial Survey**") of the demised premises, indicating the lighting load, office equipment and electrical usage of Tenant as of the date of the Initial Survey. Based upon the Initial Survey, Landlord's Consultant shall compute the value to Tenant of the estimated electrical service to be furnished to Tenant for the succeeding twelve (12) month period (such value being hereinafter called the "**Initial Electrical Value**"), which computation shall be made utilizing the higher of (i) the service classification under which Landlord is billed by the utility company for such electrical service or (ii) the service classification under which Tenant would be billed by the utility company if Tenant purchased such electrical service directly from such utility company. Landlord's Consultant shall notify Landlord and Tenant (the "**Initial Computation Notice**") of his computation of the Initial Electrical Value (which shall be binding upon both parties). If the Initial Electrical Value exceeds the Initial Electricity Factor, then the fixed rent herein reserved and the Initial Electricity Factor shall each be increased, retroactive to the Commencement Date, by the amount of such excess.

(b)    Notwithstanding anything contained in this lease which is or may be deemed to the contrary, in no event shall the Initial Electrical Value determined pursuant to this Paragraph D be less than the Initial Electricity Factor.

E.    From time to time, if the utility rate schedule for the supply of electric current to the Building shall be increased, if any surcharge (including, without limitation, a surcharge of the nature of a fuel or other adjustment) with respect thereto shall be imposed or increased and/or if the service classification for the Building shall be changed so as to result in an increase in Landlord's cost of purchasing electricity for the Building during the term of this lease, the fixed rent herein reserved and Electricity Factor (including any Increased Usage Charge (as hereinafter defined)) shall each be adjusted from time to time to reflect the resulting increase by adding thereto an amount equal to the product of (i) the then current Electricity Factor (including any Increased Usage Charge), multiplied by (ii) the percentage of increase in Landlord's cost of purchasing electricity for the Building. Any such percentage increase in Landlord's cost of purchasing electricity for the Building shall be computed by the application of the average consumption (energy and demand) of electricity for the entire Building for the twelve (12) full months immediately prior to the rate increase and/or service classification change to the new rate and/or service classification. When the amounts of the increase in the fixed rent and the Electricity Factor are determined, the parties shall execute an agreement supplementary hereto to reflect such increases, which shall be effective from the effective date of such increases in the utility rate schedule and/or such changes in the service classification for the Building; but such increases in the fixed rent and in the Electricity Factor shall be effective from such date whether or not such a supplementary agreement is executed.

F.    (a)    Tenant shall not, without prior written notice to Landlord in each instance, connect any fixtures, appliances, or equipment (in addition to those installed at the Commencement Date and shown on the Initial Survey) to the Building's electric distribution system, or make any alteration or addition to the electric system of the demised premises, that shall result in Increased Usage (as such term is hereinafter defined). In the event that from time to time Tenant installs equipment, increases the lighting load beyond the amount thereof on the Commencement Date, or operates during longer than during regular hours on business days (as defined in Section 45B hereof) (the foregoing are herein collectively called the "**Increased Usage**"), the fixed rent herein reserved and the Electricity Factor shall each be adjusted from time to time to reflect the Increased Usage by the Increased Usage Charge (as hereinafter defined). If Landlord is of the opinion that Increased Usage exists, Landlord may engage a Landlord's Consultant to make a survey (hereinafter called the "**Subsequent Survey**") of the demised premises, indicating the lighting load, office equipment and electrical usage of Tenant as of the date of the Subsequent Survey. Based upon the Subsequent Survey, Landlord's Consultant shall compute the value to Tenant of the estimated Increased Usage to be furnished to Tenant for the succeeding twelve (12) month period (such value being hereinafter called the "**Increased Usage Charge**"), which computation shall be made utilizing the higher of (i) the service classification under which Landlord is billed by the utility company for such electrical service or (ii) the service classification under which Tenant would be billed by the utility company if Tenant purchased such electrical service directly from such utility company. Landlord's Consultant shall notify Landlord and Tenant (the "**Subsequent Computation Notice**") of his computation of the Increased Usage Charge, if any (which shall be binding upon both parties) and the fixed rent reserved herein and the then Electricity Factor shall each be increased, retroactive to the earliest date of the Increased Usage, by the Increased Usage Charge. The fees of Landlord's Consultant shall be borne by Landlord and Tenant equally.

(b)    Notwithstanding anything contained in this lease which is or may be deemed to the contrary, in no event shall the Increased Usage Charge determined pursuant to this Paragraph F be less than the Initial Electricity Factor.

G.    For purposes of Sections H and I of this Article:

(i)    "**Usage**" shall mean actual usage of electricity as measured by the aforesaid metering system for each calendar month or such other period as Landlord shall determine during the term of this lease and shall include the quantity and peak demand (kilowatt hours and kilowatts);

(ii)    "**Landlord's Rate**" shall mean the service classification (including all applicable taxes, surcharges, demand charges and rates, energy charges and rates, fuel adjustment charges, time of day charges and other charges, adjustments and sums payable in respect thereof) pursuant to which Landlord would purchase electric current for the Building from the utility company supplying electric current to the Building, in effect from time to time during the term of this lease, which shall be utilized as the rate structure for the determination of "Basic Cost" (as hereinafter defined), as if (i) the only electric current being purchased directly from the supplier of electricity to the Building were the Usage) and (ii) no other electricity were being purchased for the entire Building;

(iii)    "**Basic Cost**" shall mean the product of (a) Usage multiplied by (b) Landlord's Rate; and

(iv)    "**Tenant's Cost**" shall mean an amount equal to the sum of (a) the Basic Cost, plus (b) twelve (12%) percent of the Basic Cost for Landlord's overhead and expenses in connection with submetering.

H.    Landlord shall have the option (hereinafter called the "**Submetering Option**"), which shall be exercisable in its sole discretion and upon thirty (30) days' notice to Tenant given at any time during the term of this lease, to discontinue charging for electric current on a rent inclusion basis and, instead, to charge for electric current as hereinafter provided as additional rent. If Landlord exercises the Submetering Option, then (i) Landlord shall, at its sole cost and expense, install a meter or meters for the purpose of measuring the electric current consumed in the demised premises and (ii) as of the date (hereinafter called the "**Conversion Date**") upon which Landlord discontinues charging Tenant for electric current on a rent inclusion basis, the fixed rent reserved under this lease shall be reduced by the then Electricity Factor. With respect

to the demised premises and/or any portion(s) thereof that are not contiguous with the balance of the same, if the same shall constitute less than a full floor of the Building, Landlord may, at it option, either (x) install a meter to measure the amount of Usage with respect solely to the demised premises and/or to such portion(s) or (y) measure the amount of Usage with respect thereto through common meter(s). After the Conversion Date, Landlord shall, on a monthly basis, furnish Tenant with a statement indicating the appropriate period during which the Usage was measured and the amount of Tenant's Cost payable by Tenant to Landlord for furnishing electrical current. Within five (5) days after receipt of each such statement, Tenant shall pay the amount of Tenant's Cost set forth thereon to Landlord as additional rent.

I.      Notwithstanding anything contained in this Article which may be deemed to the contrary, if any tax is imposed upon Landlord by any municipal, state or federal agency or subdivision with respect to the purchase, sale or resale of electrical energy furnished or supplied to Tenant hereunder, Tenant covenants and agrees that, where permitted by law, such taxes shall be passed on to, included in the bill to and paid by, Tenant to Landlord, as additional rent, as set forth in the bill, demand or statement furnished to Tenant.

### 45.    HEAT AND AIR-CONDITIONING:

A.      Use of the Demised premises, or any part thereof, in a manner exceeding the design conditions (including occupancy and connected electrical load) specified for the Building's HVAC systems or rearrangement of partitioning which interferes with normal operation of the heat, ventilation and air-conditioning in the Demised premises, may require changes in the Building's HVAC Systems. Such changes, so occasioned, shall be made by Tenant, at its expense, subject to Landlord's prior written approval of such changes, which approval may be withheld for any reason. Tenant shall not make any change, alteration, addition or substitution to the Building's HVAC systems without Landlord's prior written approval, which may be withheld for any reason. Tenant shall keep or cause to be kept closed all windows in the Demised premises whenever the heating service, air-conditioning service or ventilation is being provided. In addition, Tenant agrees at all times to cooperate fully with Landlord and to abide by all reasonable regulations and requirements which Landlord may prescribe for the proper functioning and protection of the Building's HVAC systems.

B.      For the purposes of this lease:

(a)      **"Heating Season"** shall mean October 16 through May 14;

(b)      **"Cooling Season"** shall mean May 15 through October 15;

(c)      **"business days"** shall mean Mondays through Fridays, except such days as are observed by the State or Federal government as legal holidays and those days designated as holidays by the applicable building service union employees contract;

(d)      **"regular hours"** shall mean the hours between 8:00 A.M. to 6:00 P.M. on business days; and

(e)      **"after hours"** shall mean, with respect to heating service, any time other than regular hours during the Heating Season, and with respect to air-conditioning service, any time other than regular hours during the Cooling Season.

C.      In accordance with, and subject to, the provisions of this Article, Landlord shall furnish heat to the Demised premises (the **"heating service"**) and air-conditioning to the Demised premises (the **"air-conditioning service"**), both through the perimeter units presently located in the Demised premises. The systems through which Landlord so supplies such heating and air-conditioning to the Demised premises, as well as ventilation, are herein referred to as the **"Building HVAC systems."**

D.      At no additional cost to Tenant, but subject to energy conservation requirements of governmental authorities, Landlord shall furnish heating service during regular hours during the Heating Season and air-conditioning service during regular hours during the Cooling Season. If Tenant shall require after hours heating service during the Heating Season, or after hours air-conditioning service during the Cooling Season, or ventilation at any time other than during regular hours during either the Heating Season or the Cooling Season, Landlord shall furnish

such after hours heating service, air-conditioning service, or ventilation, as the case may be, but only upon at least one (1) business day's prior notice and at Landlord's then prevailing hourly charges for providing such service, which shall be paid by Tenant within ten (10) days after written demand as additional rent. In the event that such after hours heating service, air-conditioning service, or ventilation, as the case may be, is requested by other tenants, the cost thereof shall be prorated among all tenants who have requested the service. Notwithstanding anything contained in this lease which may be deemed to the contrary, Landlord shall have no obligation to furnish after hours air-conditioning service during the Heating Season, and Landlord shall have no obligation to furnish after hours heating service during the Cooling Season.

46.    **LANDLORD'S OTHER SERVICES:**

A.    Landlord, at its expense, shall provide public elevator service, passenger and freight, by elevators serving the floor on which the demised premises are situated during regular hours of business days with respect to the passenger elevators, and during the hours (the **"Freight Elevator Hours"**) of 8:00 am and 4:00 pm (excluding a one (1) hour lunch break) on business days with respect to the freight elevator, and shall have at least one passenger elevator subject to call at all other times. Tenant acknowledges that Tenant's use of such freight elevator is non-exclusive and subject to scheduling by Landlord.

B.    Landlord shall, at Tenant's expense and on Tenant's request, initially list and thereafter maintain on the Building directory the names of Tenant and any of its officers and employees, provided that the names so listed shall not take up more than Tenant's Proportionate Share of the lines thereon. In the event that Tenant shall require additional or substitute listings on the Building directory, Landlord shall, to the extent space for such additional or substitute listings is available, maintain such listings, and Tenant shall pay to Landlord an amount equal to Landlord's reasonable charge for such listings.

C.    As long as Tenant is not in default under any of the covenants under the lease, Landlord shall provide water for ordinary lavatory purposes only, but if Tenant uses or consumes water for any other purposes or in unusual quantities (of which fact Landlord shall be the sole judge), Landlord may install a water meter at Tenant's expense to register such water consumption and Tenant shall pay for water consumed as shown on said meter as Additional Rental as and when bills are rendered.

D.    Landlord reserves the right, without any liability to Tenant (except as otherwise expressly provided in this lease), to stop operating any of the heating, ventilating, air conditioning, electric, sanitary, elevator, or other building systems serving the demised premises, and to stop the rendition of any of the other services required of Landlord under this lease, whenever and for so long as may be necessary by reason of accidents, emergencies, strikes, or the making of repairs or changes that Landlord is required by this lease or by law to make or in good faith deems necessary, by reason of difficulty in securing proper supplies of fuel, steam, water, electricity, labor, or supplies, or by reason of any other cause beyond Landlord's reasonable control.

E.    Subject to the Rules and Regulations now in effect or which may be from time to time adopted by Landlord, and subject further to the other provisions of this lease, during the term of this lease, Tenant shall have access to the demised premises 24 hours per day, 365 days per year.

47.    **CLEANING:**

A.    Landlord, at its expense, shall cause the demised premises to be cleaned in accordance with the then current Building standard cleaning specifications. Tenant shall pay to Landlord on demand the costs incurred by Landlord for (a) extra cleaning work in the demised premises required because of (i) misuse or neglect on the part of Tenant or its employees or visitors, (ii) use of portions of the demised premises for preparation, serving or consumption of food or beverages, data processing or reproducing operations, private lavatories or toilets or other special purposes requiring greater or more difficult cleaning work than office areas, (iii) unusual quantity of interior glass surfaces, (iv) non-building standard materials or finishes installed by Tenant or at its request, and (b) removal from the demised premises and the Building

of any refuse and rubbish of Tenant in excess of that ordinarily accumulated daily in the routine of business office occupancy. Landlord, its cleaning contractor and their employees shall have after hours access to the demised premises and the free use of light, power and water in the demised premises as reasonably required for the purpose of cleaning the demised premises in accordance with Landlord's obligations hereunder.

B.    Tenant, at its sole cost and expense, shall clean or cause to be cleaned, to the reasonable satisfaction of Landlord, all portions of the demised premises that Landlord is not obligated to clean, by using a cleaning contractor designated by Landlord or by using Tenant's employees. Tenant shall place all of its refuse and rubbish that Landlord is not obligated to remove from the demised premises in sealed plastic bags at a location and at times to be designated by Landlord. Tenant shall pay to Landlord, on demand, any costs incurred by Landlord for (i) removal from the designated location and the Building of so much of any refuse and rubbish of Tenant as shall exceed that ordinarily accumulated daily in the routine of business office occupancy for premises equal in size to the demised premises and (ii) Tenant's failure to place its refuse and rubbish at the designated location, times or in the manner hereinbefore provided. No one other than persons first approved by Landlord shall be permitted to enter the demised premises or the Building for the purposes of cleaning the same. All cleaning of the demised premises by Tenant shall be performed strictly in accordance with the rules and regulations established from time to time by Landlord.

48.    ASSIGNMENT AND SUBLETTING:

A.    (a)    Tenant, for itself, its heirs, distributees, executors, administrators, legal representatives, successors and assigns, expressly covenants that it shall not assign, mortgage, or encumber this lease or any of its rights or estates hereunder, sublet the demised premises or any part thereof, or suffer, or permit, the demised premises, or any part thereof, to be used or occupied by others, without the prior written consent of Landlord in each instance. If this lease be assigned, or if the demised premises or any part thereof be sublet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, subtenant, or occupant, and apply the net amount collected to the rent herein reserved, but no assignment, subletting, occupancy, or collection shall be deemed a waiver of the provisions hereof, the acceptance of the assignee, subtenant, or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant herein contained. Landlord's consent to an assignment or subletting shall not, in any wise, be construed to relieve Tenant from obtaining Landlord's express written consent to any further assignment or subletting. In no event shall any permitted sublessee assign or encumber its sublease, further sublet all or any portion of its sublet space, or otherwise suffer or permit the sublet space, or any part thereof, to be used or occupied by others, without Landlord's prior written consent in each instance,

(b)    As used in this Article, except in the definition of the term "Related Entity," the word "control," (including the derivations of the word "control," such as "controlling" "controlled by" or "under common control with" or words of like import) shall mean: (i) ownership of more than 50% of the outstanding voting capital stock of a corporation or more than 50% of the beneficial interests of any other entity or (ii) the ability effectively to control or direct the business decisions of such corporation or entity. The term "Related Entity" shall mean an entity which controls, is controlled by or is under common control with Tenant, which for purposes hereof shall mean (x) ownership by Tenant of more than 50% of the outstanding voting capital stock of a corporation or more than 50% of the beneficial interests of any other entity and (y) the ability to effectively control or direct the business decisions of such corporation or entity.

B.    If Tenant shall, at any time or times during the term of this lease, desire to assign this lease or sublet all or part of the demised premises, Tenant shall give notice thereof to Landlord, which notice shall be accompanied by: (a) a conformed or photostatic copy of the proposed assignment or sublease, the effective or commencement date of which shall be not less than sixty (60) nor more than ninety (90) days after the giving of such notice; (b) a statement setting forth, in reasonable detail, the identity of the proposed assignee or subtenant, the nature of its business and its proposed use of the demised premises; and (c) current financial information with respect to the proposed assignee or subtenant, including its most recent financial report. Such notice shall be deemed an offer from Tenant to Landlord whereby Landlord (or Landlord's designee) may, at its option, (i) sublease such space (hereinafter referred to as the "Leaseback

Space") from Tenant upon the terms and conditions hereinafter set forth (if the proposed transaction is a sublease of all or part of the Demised Premises), (ii) terminate this lease (if the proposed transaction is an assignment or a sublease of all or substantially all of the Demised Premises), or (iii) terminate this lease with respect to the Leaseback Space (if the proposed transaction is a sublease of part of the Demised Premises and the proposed subletting is for all (or substantially all) of the balance of the term of this lease). Said options may be exercised by Landlord by notice to Tenant at any time within sixty (60) days after such notice has been given by Tenant to Landlord; and during such sixty (60) day period Tenant shall not assign this lease nor sublet such space to any person.

C. (a) If Landlord exercises its option to terminate this lease in the case where Tenant desires either to assign this lease or sublet all or substantially all of the Demised Premises, then, this lease shall end and expire on the date that such assignment or sublet was to be effective or commence, as the case may be, and the fixed rent and additional rent shall be paid and apportioned to such date.

(b) If Landlord exercises its option to terminate this lease in part in any case where Tenant desires to sublet part of the Demised Premises, then, (i) this lease shall end and expire with respect to such part of the Demised Premises on the date that the proposed sublease was to commence; (ii) from and after such date the fixed rent and additional rent shall be adjusted, based upon the proportion that the rentable area of the Demised Premises remaining bears to the total rentable area of the Demised Premises; and (iii) Tenant shall pay to Landlord, as additional rent, within ten (10) days after Landlord's demand therefor, the costs incurred by Landlord in physically separating such part of the Demised Premises from the balance of the Demised Premises and in complying with any laws and requirements of any public authorities relating to such separation.

D. (a) If Landlord exercises its option to sublet the Leaseback Space, such sublease to Landlord or its designee (as subtenant) shall be at the lower of (i) the rental rate per rentable square foot of fixed rent and additional rent then payable pursuant to this lease and (ii) the rentals set forth in the proposed sublease, and shall be for the same term as that of the proposed subletting, and such sublease:

(v) shall be expressly subject to all of the covenants, agreements, terms, provisions and conditions of this lease except such as are irrelevant or inapplicable, and except as otherwise expressly set forth to the contrary in this Section;

(w) shall be upon the same terms and conditions as those contained in the proposed sublease, except such as are irrelevant or inapplicable and except as otherwise expressly set forth to the contrary in this Section;

(x) shall give the sublessee the unqualified and unrestricted right, without Tenant's permission, to assign such sublease or any interest therein and/or to sublet the Leaseback Space or any part or parts of the Leaseback Space and to make any and all changes, alterations, and improvements in the space covered by such sublease and if the proposed sublease will result in all or substantially all of the Demised Premises being sublet, grant Landlord or its designee the option to extend the term of such sublease for the balance of the term of this lease less one (1) day;

(y) shall provide that any assignee or further subtenant, of Landlord or its designee, may, at the election of Landlord, be permitted to make alterations, decorations and installations in the Leaseback Space or any part thereof and shall also provide in substance that any such alterations, decorations and installations in the Leaseback Space therein made by any assignee or subtenant of Landlord or its designee may be removed, in whole or in part, by such assignee or subtenant, at its option, prior to or upon the expiration or other termination of such sublease provided that such assignee or subtenant, at its expense, shall repair any damage and injury to that portion of the Leaseback Space so sublet caused by such removal; and

(z) shall also provide that (A) the parties to such sublease expressly negate any intention that any estate created under such sublease be merged with any other estate held by either of said parties, (B) any assignment or subletting by Landlord or its designee (as the subtenant) may be for any purpose or purposes that Landlord, in Landlord's uncontrolled discretion, shall deem suitable or appropriate, (C) Tenant, at Tenant's expense, shall and will at

all times provide and permit reasonably appropriate means of ingress to and egress from the Leaseback Space so sublet by Tenant to Landlord or its designee, (D) Landlord, at Tenant's expense, may make such alterations as may be required or deemed necessary by Landlord to physically separate the Leaseback Space from the balance of the Demised Premises and to comply with any laws and requirements of public authorities relating to such separation, and (E) that at the expiration of the term of such sublease, Tenant will accept the space covered by such sublease in its then existing condition, subject to the obligations of the sublessee to make such repairs thereto as may be necessary to preserve the premises demised by such sublease in good order and condition.

      (b)    If Landlord exercises its option to sublet the Leaseback Space, then:

      (i)    Landlord shall indemnify and save Tenant harmless from all obligations under this lease as to the Leaseback Space during the period of time it is so sublet to Landlord;

      (ii)    Performance by Landlord, or its designee, under a sublease of the Leaseback Space shall be deemed performance by Tenant of any similar obligation under this lease and any default under any such sublease shall not give rise to a default under a similar obligation contained in this Lease, nor shall Tenant be liable for any default under this lease or deemed to be in default hereunder if such default is occasioned by or arises from any act or omission of the tenant under such sublease or is occasioned by or arises from any act or omission of any occupant holding under or pursuant to any such sublease; and

      (iii)    Tenant shall have no obligation, at the expiration or earlier termination of the term of this lease, to remove any alteration, installation or improvement made in the Leaseback Space by Landlord.

      E.    In the event that Tenant complies with the provisions of Section B of this Article and Landlord does not exercise an option provided to it thereunder within the time provided therefor, and provided that Tenant is not in default of any of Tenant's obligations under this lease after notice and the expiration of any applicable grace period, Landlord's consent (which must be in writing and in form reasonably satisfactory to Landlord) to the proposed assignment or sublease shall not be unreasonably withheld or delayed provided that Tenant has complied with the following conditions:

      (a)    in Landlord's reasonable judgment, the proposed assignee or subtenant is engaged in such a business, and the demised premises, or the relevant part thereof, will be used in such a manner, that: (i) is limited to the use expressly permitted under this lease; and (ii) will not violate any negative covenant as to use contained in any other lease of space in the Building about which Tenant has been informed following its request to Landlord for such information;

      (b)    the proposed assignee or subtenant is a reputable person of good character and with sufficient financial worth considering the responsibility involved, and Landlord has been furnished with reasonable proof thereof;

      (c)    neither (i) the proposed assignee or sublessee nor (ii) any person that, directly or indirectly, controls, is controlled by, or is under common control with, the proposed assignee or sublessee or any person who controls the proposed assignee or sublessee, is then an occupant or tenant of any part of the Building;

      (d)    the proposed assignee or sublessee is not a person with whom Landlord is then, or shall have been during the previous six (6) month period, negotiating to lease space in the Building;

      (e)    the proposed assignment agreement or sublease agreement, as the case may be, shall be in form reasonably satisfactory to Landlord and shall comply with the applicable provisions of this Article;

      (f)    there shall not be more than one (1) occupant, including Tenant, of the demised premises;