(g)     the amount of the aggregate rent to be paid by the proposed subtenant is not less than the then current market rent per rentable square foot for the demised premises, and the rental and other terms and conditions of the assignment or sublease are the same as those contained in the proposed assignment or sublease furnished to Landlord pursuant to Section B;

(h)     Tenant shall not have: (i) advertised or publicized in any way the availability of the demised premises without prior notice to, and approval by, Landlord, which approval Landlord agrees not to unreasonably withhold, nor shall any advertisement state the name (as distinguished from the address) of the Building or the proposed rental, or (ii) listed the demised premises for subletting or assignment, with a broker, agent or representative other than the then managing agent of the Building or other agent designated by Landlord, or otherwise at a rental rate less than the greater rate of (x) the fixed rent and additional rent then payable hereunder for such space, or (y) the fixed rent and additional rent at which Landlord is then offering to lease other space in the Building;

(i)     the sublease shall not allow the use of the demised premises or any part thereof: (i) as a restaurant, luncheonette, or otherwise for the preparation and/or sale of food for on or off premises consumption; (ii) as a discount store; (iii) as a multiple tenancy store; (iv) by a foreign or domestic governmental agency; (v) as a betting parlor or gambling casino; or (vi) by a utility company;

(j)     the proposed assignee or sublessee is not a person entitled, directly or indirectly, to diplomatic or sovereign immunity or is not subject to service of process in New York State or to the jurisdiction of the State and Federal Courts located in New York State;

(k)     the sublease shall not provide for an option on behalf of the subtenant thereunder to extend or renew the term of such sublease; and

(l)     to the extent any superior mortgage or any superior lease provides that the proposed assignment or subletting is subject to the approval or consent of the holder thereof or lessor thereunder, such approval or consent has been given.

F.     (a)     Tenant shall reimburse Landlord on demand and as additional rent, for all reasonable costs and expenses that may be incurred or paid by Landlord in connection with all proposed assignments and subleases, including, without limitation, the costs of making investigations as to the acceptability of the proposed assignee or subtenant, and legal costs incurred in connection with the reviewing of the proposed assignment or subletting and all of the documents and other information related thereto, and the preparation of Landlord's consent to the proposed transaction and all related documents (which costs and expenses Tenant covenants and agrees to reimburse to Landlord regardless of whether Landlord consents to the proposed assignment or sublease or whether such consent is required hereunder).

(b)     In the event that (i) Landlord fails to exercise any of its options under Section B of this Article and consents to a proposed assignment or sublease and (ii) Tenant fails to execute and deliver the assignment or sublease to which Landlord consented within sixty (60) days after the giving of such consent, then Tenant shall again comply with all of the provisions and conditions of Section B, before assigning this lease or subletting all or part of the demised premises.

G.     Each subletting pursuant to this Article shall be subject to all of the covenants, agreements, terms, provisions and conditions contained in this lease. Notwithstanding any such subletting and/or acceptance of rent or additional rent by Landlord from any subtenant, Tenant shall and will remain fully liable for the payment of the fixed rent and additional rent due, and to become due, hereunder, for the performance of all of the covenants, agreements, terms, provisions and conditions contained in this lease on the part of Tenant to be performed and for all acts and omissions of any licensee, subtenant, or any other person claiming under or through any subtenant that shall be in violation of any of the obligations of this lease, and any such violation shall be deemed to be a violation by Tenant.     Tenant further agrees that, notwithstanding any such subletting, no other and further subletting of the demised premises by Tenant, or any person claiming through or under Tenant (except as provided in Section K of this Article), shall, or will be, made, except upon compliance with, and subject to, the provisions of this Article. If Landlord shall decline to give its consent to any proposed assignment or sublease, or if Landlord shall exercise any of its options under Section B, Tenant shall indemnify, defend

and hold Landlord harmless from and against any and all losses, liabilities, damages, costs and expenses (including reasonable counsel fees) resulting from any claims that may be made against Landlord by the proposed assignee or subtenant or by any brokers or other persons claiming a commission or similar compensation in connection with the proposed assignment or sublease.

H.     With respect to each and every sublease or subletting, whether made with Landlord's consent pursuant to Section A or without Landlord's consent pursuant to Section K, it is further agreed that:

(a)     no subletting shall be for a term ending later than one day prior to the expiration date of this lease;

(b)     no sublease shall be valid, and no subtenant shall take possession of the demised premises or any part thereof, until a true, complete, fully-executed counterpart of such sublease has been delivered to Landlord; and

(c)     each sublease shall provide that it is subject and subordinate to this lease and to the matters to which this lease is or shall be subordinate, and that, in the event of termination, re-entry, or dispossess by Landlord under this lease, Landlord may, at its option, take over all of the right, title and interest of Tenant as sublandlord under such sublease, and such subtenant shall, at Landlord's option, attorn to Landlord pursuant to the then executory provisions of such sublease, except that Landlord shall not be:

(i)     liable for any previous act or omission of Tenant (or its predecessor in interest) under such sublease;

(ii)     subject to any credits, offsets, claims, counterclaims, demands or defenses which the subtenant may have against Tenant (or its predecessors in interest);

(iii)     bound by any previous modification of such sublease or by any previous prepayment of more than one month's rent, unless such modification or prepayment shall have been expressly approved in writing by Landlord;

(iv)     bound by any covenant to undertake or complete any construction of the premises demised to the subtenant or any portion thereof or to perform any other work that Tenant is obligated to perform or to pay for or reimburse the subtenant for any costs incurred in connection with any construction or work;

(v)     required to account for any security deposit of the subtenant other than any security deposit actually delivered to Landlord;

(vi)     liable for the obligations of Tenant under such sublease for any period of time other than such period as Landlord holds such interest;

(vii)     responsible for any monies owing by Tenant to the credit of the subtenant;

(viii)     bound by any obligation to make any payment to the subtenant or grant or be subject to any credits; or

(ix)     bound by any obligation to provide any service or furnish any utility that Landlord is not obligated to provide or furnish under this lease to the portion of the demised premises demised to the subtenant under such sublease.

I.     Any assignment or transfer, whether made with Landlord's consent pursuant to Section A or without Landlord's consent pursuant to Section K, shall be made only if, and shall not be effective until, the assignee shall execute, acknowledge and deliver to Landlord an agreement, in form and substance satisfactory to Landlord, whereby the assignee shall assume all of the obligations of this lease on the part of Tenant to be performed or observed and whereby the assignee shall agree that the provisions contained in Section A shall, notwithstanding such assignment or transfer, continue to be binding upon it in respect of all future assignments and transfers. The original named Tenant covenants that, notwithstanding any assignment or transfer, whether or not in violation of the provisions of this lease, and notwithstanding the acceptance of fixed rent and/or additional rent by Landlord from an assignee, transferee, or any

other party, the original named Tenant shall remain fully liable for the payment of the fixed rent and additional rent and for the other obligations of this lease on the part of Tenant to be performed or observed.

J.    If Landlord shall give its consent to any assignment of this lease or to any sublease, Tenant shall, in consideration therefor, pay to Landlord, as additional rent:

(i)    in the case of an assignment, an amount equal to (y) all sums and other consideration paid to Tenant by the assignee for, or by reason of, such assignment, including all sums paid for the sale of Tenant's fixtures, leasehold improvements, equipment, furniture, furnishings, or other personal property less (z), in the case of a sale thereof, the then net unamortized or undepreciated cost thereof, determined on the basis of Tenant's federal income tax returns; and

(ii)    in the case of a sublease, an amount equal to (y) any rents, additional charges, or other consideration payable under the sublease by the subtenant to Tenant that are in excess of the fixed rent and additional rent accruing during the term of the sublease in respect of the subleased space (at the rate per square foot payable by Tenant hereunder) pursuant to the terms hereof, including all sums paid for the sale or rental of Tenant's fixtures, leasehold improvements, equipment, furniture, or other personal property less (z), in the case of a sale thereof, the then net unamortized or undepreciated cost thereof, determined on the basis of Tenant's federal income tax returns.

The sums payable under this Section J shall be paid to Landlord as and when payable by the assignee or subtenant to Tenant.

K.    (a)    For the purpose of this Article, the following are "Prohibited Transfers" to which Section A of this Article shall apply as if any of such Prohibited Transfers were an assignment of this lease:

The issuance or transfer of interests in Tenant or any guarantor of Tenant's obligations hereunder (a "Guarantor") or any person (a "Parent") that controls Tenant or any Guarantor (whether stock, partnership interests, interests in a limited liability company or otherwise) to a person or group of related persons, whether in a single transaction or a series of related or unrelated transactions, in such quantities that after such issuance or transfer, control of Tenant or such Guarantor (as it shall be constituted after giving effect to such issuance or transfer of interests in Tenant, Guarantor or Parent, as the case may be), directly or indirectly, shall have changed, shall be deemed a Prohibited Transfer unless the conditions of subsection (b) below are met. Any person or legal representative of Tenant, to whom Tenant's interest under this lease passes by operation of law, or otherwise, shall be bound by the provisions of this Article.

(b)    Notwithstanding the foregoing, if Tenant, a Guarantor or entity which controls Tenant or Guarantor is a corporation listed and traded on a nationally recognized stock exchange or over-the-counter market, the transfer, sale or other disposition (including issuance) of the stock of such corporation shall not be deemed an assignment of this lease or a Prohibited Transfer. In addition, (i) transfers of the stock of Tenant to a Related Entity or into which or with which Tenant is merged or consolidated or (ii) an assignment to a Related Entity shall not be a Prohibited Transfer, provided that: (A) the successor to Tenant has a net worth, computed in accordance with generally accepted accounting principles, at least equal to the greater of (A) the net worth of Tenant immediately prior to such merger, consolidation, or transfer or (B) the net worth of Tenant herein named on the date of this lease; (B) reasonable proof satisfactory to Landlord of such net worth shall have been delivered to Landlord, together with such books and records of the then Tenant as may be necessary to establish that any assignee claimed by Tenant to be a Related Entity is in fact a Related Entity, at least ten (10) days prior to the effective date of any such transaction; (C) the purposes for which such successor to Tenant intends to use the demised premises (or the applicable portions thereof) are uses expressly permitted by this lease and (D) an executed duplicate original of the assignment and assumption agreement (other than in connection with the sale of stock only) shall be delivered to Landlord for review by Landlord and Landlord's counsel, at least ten (10) days prior to the effective date thereof. Simultaneously with the delivery of such assignment and assumption agreement, Tenant shall deliver to Landlord a certified copy of a duly adopted resolution of the board of directors of both Tenant and the assignee, in form and content reasonably satisfactory to Landlord, authorizing the execution,

acknowledgment and delivery of said assignment and assumption agreement, and the transactions contemplated therein.

L.     The joint and several liability of Tenant and any immediate or remote successor in interest to Tenant, and the due performance of the obligations of this lease on Tenant's part to be performed or observed, shall not be discharged, released, or impaired in any respect by any agreement or stipulation made by Landlord extending the time of, or modifying any of the obligations of, this lease, or by any waiver or failure of Landlord to enforce any of the obligations of this lease.

M.     The listing of any name other than that of Tenant, whether on the doors of the demised premises, on the Building directory, if any, or otherwise, shall not operate to vest any right or interest in this lease or in the demised premises, nor shall it be deemed to be the consent of Landlord to any assignment or transfer of this lease, to any sublease of the demised premises, or to the use or occupancy thereof by others.

## 49.     INSURANCE:

A.     Tenant shall not violate, or permit the violation of, any condition imposed by the standard fire insurance policy then issued for office buildings in the Borough of Manhattan, City of New York, and shall not do, permit anything to be done, keep, or permit anything to be kept, in the demised premises that would: (i) subject Landlord to any liability or responsibility for personal injury, death, or property damage; (ii) increase the fire or other casualty insurance rate on the Building or the property therein over the rate that would otherwise then be in effect (unless Tenant pays the resulting premium as provided in Section F of this Article); or (iii) result in insurance companies of good standing refusing to insure the Building or any of such property in amounts reasonably satisfactory to Landlord.

B.     Tenant covenants to provide on or before the earlier to occur of (i) the Commencement Date and (ii) ten (10) days from the date of this lease and to keep in force during the term hereof and during any other time that Tenant or any person claiming by, through or under Tenant is in possession of, or is otherwise using or occupying, any portion of the Demised Premises, the following insurance coverage which coverage shall be effective on the Commencement Date:

(a)     A comprehensive policy of liability insurance, with broad form endorsement, containing an omnibus named insured provision naming as additional insureds Landlord and the holders of all superior mortgages, the lessors under all superior leases, Landlord's agents and all other persons and entities designated by Landlord (but only to the extent that Landlord specifically requests such holders, lessors, agents and other persons and entities to be so named) and protecting Landlord, Tenant, all of Tenant's subtenants, and all such other additional insureds, against (i) all claims, demands or actions for injury to, or death of, persons or property, arising from, related to, or in any way connected with the use or occupancy of the Demised Premises, or caused by actions or omissions to act of Tenant, its agents, servants and contractors, or of any person or entity claiming by, through or under Tenant, and (ii) all accidents occurring in or about the Demised Premises. Such policy shall have limits of liability of not less than Three Million ($3,000,000.00) Dollars combined single limit coverage on a per occurrence basis, including property damage. Such policy shall contain a contractual liability coverage endorsement with respect to Tenant's indemnification obligations under this lease, and shall include independent contractors' coverage. Such insurance may be carried under a blanket policy covering the Demised Premises and other locations of Tenant, if any, provided such policy contains an endorsement (i) naming Landlord (and the above-mentioned other persons and entities) as additional insureds, (ii) specifically referencing the Demised Premises, and (iii) guaranteeing a minimum limit available for the Demised Premises equal to the limits of liability required under this lease;

(b)     "All-Risk" coverage in an amount adequate to cover the cost of replacement of all of personal property, fixtures, furnishing and equipment, including Tenant's Work located in the Demised Premises;

(c)     worker's compensation, and, if required by applicable law, disability and such other similar insurance, in statutory amounts, covering all persons that are performing

Changes (as hereinafter defined), or with respect to whom death or bodily injury claims could be asserted against Landlord or the Land or the Building; and

(d)    business interruption insurance in the amount of annual gross income for one (1) year.

All such policies shall be issued by companies of recognized responsibility licensed to do business in New York State and rated by Best's Insurance Reports or any successor publication of comparable standing and carrying a rating of A VIII or better or the then equivalent of such rating. Prior to the time that such insurance is first required to be carried by Tenant, and, thereafter, at least fifteen (15) days prior to the expiration of any such policies, Tenant agrees to deliver to Landlord either duplicate originals of the aforesaid policies or certificates evidencing such insurance, provided that said certificate contains an endorsement that such insurance may not be modified or cancelled except upon fifteen (15) days' notice to Landlord, together with evidence of payment for the policy. Tenant's failure to provide and keep in force the aforementioned insurance shall be regarded as a material default hereunder, entitling Landlord to exercise any or all of the remedies as provided in this lease in the event of Tenant's default.

C.    Landlord and Tenant shall each endeavor to secure an appropriate clause in, or an endorsement upon, each fire or extended coverage policy obtained by it and covering the Building, the demised premises, or the personal property, fixtures and equipment located therein or thereon, pursuant to which the respective insurance companies waive subrogation or permit the insured, prior to any loss, to agree with a third party to waive any claim it might have against said third party. The waiver of subrogation or permission for waiver of any claim hereinbefore referred to shall extend to the agents of each party and its employees and, in the case of Tenant, shall also extend to all other persons and entities occupying or using the demised premises in accordance with the terms of this lease. If, and to the extent that, such waiver or permission can be obtained only upon payment of an additional charge, then, except as provided in Sections D and E of this Article, the party benefiting from the waiver or permission shall pay such charge upon demand, or shall be deemed to have agreed that the party obtaining the insurance coverage in question shall be free of any further obligations under the provisions hereof relating to such waiver or permission.

D.    In the event that Tenant shall be unable at any time to obtain one of the provisions referred to in Section C above, in any of its insurance policies, Tenant shall cause Landlord to be named in such policy or policies as one of the assureds, but if any additional premium shall be imposed for the inclusion of Landlord as such an assured, Landlord shall pay such additional premium upon demand or Tenant shall be excused from its obligations under Section C with respect to the insurance policy or policies for which such additional premiums would be imposed. In the event that Landlord shall have been named as one of the assureds in any of Tenant's policies in accordance with the foregoing, Landlord shall endorse promptly to the order of Tenant, without recourse, any check, draft, or order for the payment of money representing the proceeds of any such policy, or any other payment growing out of or connected with said policy, and Landlord hereby irrevocably waives any and all rights in and to such proceeds and payments.

E.    In the event that Landlord shall be unable at any time to obtain one of the provisions referred to in Section C in any of its insurance policies, Landlord shall, at Tenant's option, cause Tenant to be named in such policy or policies as one of the assureds, but if any additional premium shall be imposed for the inclusion of Tenant as such an assured, Tenant shall pay such additional premium upon demand. In the event that Tenant shall have been named as one of the assureds in any of Landlord's policies in accordance with the foregoing, Tenant shall endorse promptly to the order of Landlord, without recourse, any check, draft, or order for the payment of money representing the proceeds of any such policy, or any other payment growing out of or connected with said policy, and Tenant hereby irrevocably waives any and all rights in and to such proceeds and payments.

F.    Subject to the provisions of Sections C, D and E, and insofar as may be permitted by the terms of the insurance policies carried by it, each party hereby releases the other with respect to any claim (including a claim for negligence) that it might otherwise have against the other party for loss, damages, or destruction with respect to its property by fire or other casualty (including rental value or business interruption, as the case may be) occurring during the term of this lease or during any other time that Tenant or any person claiming by, through or under

Tenant is in possession of, or is otherwise using or occupying, any portion of the Demised Premises.

G.    If, by reason of a failure of Tenant to comply with the provisions of Section A of this Article, the rate of fire insurance with extended coverage on the Building or equipment or other property of Landlord shall be higher than it otherwise would be, Tenant shall reimburse Landlord, on demand, for that part of the premiums for fire insurance and extended coverage paid by Landlord because of such failure on the part of Tenant.

H.    If any dispute shall arise between Landlord and Tenant with respect to the incurrence or amount of any additional insurance premium referred to in Section F, the dispute shall be determined by arbitration.

I.    A schedule or make up of rates for the Building or the demised premises, as the case may be, issued by the New York Fire Insurance Rating Organization or other similar body making rates for fire insurance and extended coverage for the premises concerned, shall be conclusive evidence of the facts therein stated and of the several items and charges in the fire insurance rate with extended coverage then applicable to such premises.

50.    SUBORDINATION:

A.    For the purposes of this lease, the mortgages referred to in Article 7 of this lease are herein defined as "superior mortgages" and the leases referred to in said Article 7 are herein defined as "superior leases." The then holders of all superior mortgages and the then lessors under all superior leases are intended to be third-party beneficiaries of this Article, and may enforce the provisions of this Article before or after the foreclosure of the superior mortgage in question and before or after the termination of the superior lease in question, as the case may be. In the event of any act or omission of Landlord that would give Tenant the right, immediately or after lapse of a period of time, to cancel or terminate this lease, or to claim a partial or total eviction, or entitle Tenant to any abatement or offset against the payment of rent, Tenant shall not exercise such right (i) until it has given written notice of such act or omission or the accrual of such claim or right, to the holder of each superior mortgage and the lessor of each superior lease whose name and address shall previously have been furnished to Tenant in writing, and (ii)(A) if the Landlord's default in question can be cured by the payment of money or is otherwise curable within thirty (30) days, the holders of each superior mortgage and the lessors under each superior lease who shall have become entitled under such superior mortgage(s) and such superior lease(s) to cure such default shall have thirty (30) days to cure same; and (B) if the Landlord's default in question cannot be cured by the payment of money and cannot otherwise reasonably be cured within thirty (30) days, the holders of each superior mortgage and the lessors under each superior lease who shall have become entitled under such superior mortgage(s) and such superior lease(s) to cure such default shall have such period of time as is necessary to cure the default; provided that, in the case of clause (ii)(B) above, (x) the holder or lessor, as the case may be, notifies Tenant of its intention to cure the default, (y) such holder or lessor, as the case may be, commences action to cure the default within thirty (30) days, and (z) such holder or lessor, as the case may be, thereafter proceeds diligently at all times to cure the default. Notwithstanding the foregoing, in no event shall any holder of a superior mortgage or lessor under a superior lease have a lesser period of time to cure a default than is granted to Landlord under this lease.

B.    If the lessor of a superior lease or the holder of a superior mortgage shall succeed to the rights of Landlord under this lease, whether through possession or foreclosure action or delivery of a new lease or deed, or if a superior lease shall terminate or be terminated for any reason, then, at the election and upon demand of the party so succeeding to Landlord's rights, as the successor owner of the property of which the demised premises is a part, or as the mortgagee in possession thereof, or otherwise (such party, owner or mortgagee being herein sometimes called the "successor landlord"), Tenant shall attorn to and recognize such successor landlord as Tenant's landlord under this lease, and shall promptly execute and deliver any instrument that such successor landlord may reasonably request to evidence such attornment. Upon such attornment, this lease shall continue in full force and effect as, or as if it were, a direct lease between the successor landlord and Tenant, upon all of the executory terms, conditions and covenants as are set forth in this lease and shall be applicable after such attornment, except that the successor landlord shall not be (i) liable for any previous act or omission of Landlord under this lease, (ii) subject to any credit, offset, claim, counterclaim, demand or defense which Tenant

may have against Landlord, (iii) bound by any previous modification of this lease (made without the successor landlord's consent) or by any previous prepayment of more than one (1) month's rent, (iv) bound by any covenant of Landlord to undertake or complete any construction of the demised premises or any portion thereof, (v) required to account for any security deposit of Tenant other than any security deposit actually delivered to the successor landlord by Landlord, (vi) liable for the obligations of Landlord under this lease for any period of time other than such period as such successor landlord holds such interest, and (vii) responsible for any monies owing by Landlord to the credit of Tenant. The foregoing provisions shall inure to the benefit of any successor landlord, shall apply to the tenancy of Tenant notwithstanding that this lease may terminate upon the termination of the superior lease, and shall be self-operative upon any such demand, without requiring any further instrument to give effect to said provisions. Tenant, however, upon demand of any successor landlord, agrees to execute, from time to time, an instrument in confirmation of the foregoing provisions, satisfactory to such successor landlord, in which Tenant shall acknowledge such attornment. Nothing contained in this paragraph shall be construed to impair any right, privilege or option of any successor landlord or, except as otherwise provided in this lease, to impair any right, privilege or option of Tenant.

      C.    If, in connection with obtaining financing or refinancing for the Building, or Landlord's estate and interest therein, a lender shall request reasonable modifications to this lease as a condition to such financing or refinancing, Tenant will not withhold, delay or defer its consent thereto, provided that such modifications do not increase the obligations of Tenant hereunder (except, perhaps, to the extent that Tenant may be required to give notices of any defaults by Landlord to such lender and/or permit the curing of such defaults by such lender together with the granting of such additional time for such curing as may be required for such lender to get possession of the Building or Landlord's interest therein) or materially adversely affect the leasehold interest hereby created. In no event shall a requirement that the consent of any such lender be given for any modification of this lease or subject to the provisions of this lease for any assignment or sublease, be deemed to materially adversely affect the leasehold interest hereby created. In the event Tenant fails to execute and deliver to Landlord a duly executed modification or amendment of this lease incorporating such modification within ten (10) days of request therefor, Landlord may execute such amendment or modification for and on behalf of Tenant as its attorney-in-fact coupled with an interest solely to execute and deliver any instruments required to carry out the intent of this Section C on behalf of Tenant.

51.    **FURTHER PROVISIONS AS TO DEFAULT:**

      A.    All sums of money, other than the fixed rent reserved in this lease, that shall become due from and payable by Tenant to Landlord hereunder shall constitute additional rent, for default in the payment of which Landlord shall have the same remedies as for a default in the payment of fixed rent.

      B.    Section 17(1) of this lease shall be amended by reducing the fifteen (15) day period set forth therein with respect to the non-payment of rent or additional rent to five (5) days, so that if Tenant fails to make any payment of fixed rent or additional rent when due and Landlord serves a written notice upon Tenant specifying the nature of such default and such default fails to be remedied in full within five (5) days after such notice is served upon Tenant, Landlord may serve the written five (5) day notice of cancellation referred to in said Section 17(1) and exercise any or all of its other rights and remedies set forth in Article 17 and elsewhere in this lease or available at law or in equity, Tenant hereby agreeing that all defaults in Tenant's obligation to pay fixed rent and additional rent can be completely cured and remedied within five (5) days after the notice of default is served upon Tenant. It is the intention of the parties that the provisions of Article 17 of this lease shall and do create an enforceable conditional limitation applicable to any default by Tenant in the observance, performance or compliance with any of the terms, covenants or conditions in this lease on Tenant's part to observe, perform or comply with, including, without limitation, the covenant to pay fixed rent and additional rent.

      C.    If Tenant shall fail to pay in full any fixed rent or additional rent when first due under this lease (without taking into account any cure period that may be applicable thereto) and such failure shall continue for more than five (5) days after such payment was first due, then (i) Tenant shall pay to Landlord as additional rent, upon Landlord's demand, therefor, a late charge equal to five (5%) percent of amount of the payment that is not paid when so first due, and (ii) in addition to such late charge, Tenant shall pay to Landlord as additional rent, upon Landlord's

demand therefor, interest at a rate per annum equal to the lesser of (A) five (5%) percent over the Prime Rate, and (B) the maximum rate of interest that then may be charged to parties of the same legal capacity as Tenant, which interest shall accrue and shall be computed from and after the date on which any such payment was first due under this lease. Nothing herein contained shall be intended to violate any applicable law, code or regulation and in all instances all such late charges and rates of interest shall be automatically reduced to any maximum applicable legal charge or rate. The provisions of this Section are in addition to all other rights and remedies available to Landlord for nonpayment of fixed rent or additional rent.

D.    Bills for any expenses incurred by Landlord in connection with any performance by it for the account of Tenant, and bills for all costs, expenses and disbursements of every kind and nature whatsoever, including reasonable counsel fees, involved in collecting or endeavoring to collect the fixed rent or additional rent or any part thereof or enforcing or endeavoring to enforce any rights against Tenant, under or in connection with this lease, or pursuant to law, including any such cost, expense and disbursement involved in instituting and prosecuting summary proceedings, as well as bills for any property, material, labor, or services provided, furnished, or rendered, by Landlord or at its instance to Tenant, may be sent by Landlord to Tenant monthly, or immediately, at Landlord's option, and shall be due and payable in accordance with the terms of such bills.

E.    Tenant covenants and agrees that it shall not enter into any assignment of lease, assignment of sublease or sublease of premises with any other tenant or occupant of the Building whereby such other tenant or occupant assigns its lease or sublease or sublets all or part of its premises to Tenant. The covenants and obligations contained in this Paragraph E shall be deemed material covenants and obligations of Tenant under this lease for default of which shall entitle Landlord to exercise the same rights and remedies as if Tenant had defaulted in the payment of the rents reserved hereunder.

F.    (a)    For the purposes of this Section, Landlord's rights under Section 16(b) of this lease to recover from Tenant as and for liquidated damages an amount equal to the difference between the rent reserved hereunder for the unexpired portion of the term demised and the fair and reasonable rental value of the demised premises is hereinafter referred to as the "Acceleration Remedy." In case of any default, re-entry, expiration and/or dispossess by summary proceedings or otherwise as described in Article 17 of this lease, in lieu of the deficiency damages described in Article 18 of this lease, Landlord may avail itself of the Acceleration Remedy.

(b)    For the purposes of Section 16(b) of this lease, the term "rent reserved hereunder for the unexpired portion of the term demised" shall mean the aggregate of the fixed rent and the additional rent payable hereunder which would have been payable by Tenant (conclusively presuming the additional rent to be the same as was payable for the year immediately preceding such termination) for the period commencing with the termination of this lease pursuant to Articles 16 or 17 above, as the case may be, or the date of any re-entry provided for in Article 17 above, as the case may be, and ending with the Expiration Date, had this lease not so terminated or had Landlord not so re-entered the demised premises.

(c)    Nothing contained in this lease shall be construed to limit or preclude recovery by Landlord against Tenant of any sums or damages to which, in addition to the damages particularly provided in this lease, Landlord may lawfully be entitled by reason of any default under this lease on the part of Tenant. Nothing herein contained shall be construed to limit or prejudice the right of Landlord to prove for and obtain as liquidated damages by reason of the termination of this lease or re-entry on the demised premises for the default of Tenant under this lease, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, such damages are to be proved whether or not such amount be greater, equal to, or less than any of the sums referred to in Articles 16 or 18 above.

## 52.    SECURITY DEPOSIT:

A.    Pursuant to that certain Agreement of Sublease dated as of December 1, 2003 (the "Sublease") between Skidmore, Owings & Merrill LLP ("SOM"), as sublandlord, and Tenant, as tenant, in respect of the demised premises, Tenant is depositing with SOM the sum of

$21,875.00 by an unendorsed certified or official bank as security for the Sublease (the "Security"). Tenant hereby authorizes SOM upon the expiration of the term of the Sublease and Landlord agrees to accept from SOM the Security as security for the faithful performance, observance and compliance with all of the terms, covenants and conditions of this lease on Tenant's part to perform, observe or comply with. SOM's failure to transfer the Security to Landlord on or before the Expiration Date shall be deemed a default by Tenant hereunder and entitling Landlord to exercise any remedy available to it pursuant to this lease. Tenant agrees that, in the event that Tenant defaults under any of the terms, covenants or conditions in this lease on Tenant's part to observe, perform or comply with (including, without limitation, the payment of any installment of fixed rent or any amount of additional rent), Landlord may notify the Issuing Bank (as such term is defined in Section B hereof) and thereupon receive all of the monies represented by the said Letter of Credit and use, apply, or retain the whole or any part of such proceeds, or both, as the case may be, to the extent required for the payment of any fixed rent, additional rent, or any other sums as to which Tenant is in default, or for any sum that Landlord may expend or may be required to expend by reason of any such default (including any damages or deficiency accrued before or after summary proceedings or other re-entry by Landlord). In the event that Landlord applies or retains any portion or all of such proceeds of such Letter of Credit, the amount not so used, applied or retained shall continue to be treated as Tenant's security deposit, and Tenant shall restore the amount so applied or retained within five (5) days after Landlord's demand therefor, so that, at all times, the amount deposited shall be $21,875.00. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this lease, that portion, if any, of the Letter of Credit not used, applied or retained shall be returned to Tenant after the Expiration Date and after delivery of possession of the entire demised premises to Landlord, in accordance with, and subject to, the applicable provisions of this lease.

B.    (a)    Tenant shall may deliver to Landlord as such security, a clean, irrevocable and unconditional Letter of Credit issued by and drawn upon a commercial bank (hereinafter referred to as the "Issuing Bank") with offices for banking purposes in the City of New York and approved by Landlord, which Letter of Credit shall have a term of not less than one year, be in form and content satisfactory to Landlord, be for the account of Landlord and be in the amount of $21,875.00. The Letter of Credit shall provide that:

(i)    The Issuing Bank shall pay to Landlord or its duly authorized representative an amount up to the face amount of the Letter of Credit upon presentation of only the Letter of Credit and a sight draft in the amount to be drawn;

(ii)    The Letter of Credit shall be deemed to be automatically renewed, without amendment, for consecutive periods of one year each, unless the Issuing Bank sends written notice (hereinafter called the "Non-Renewal Notice") to Landlord by certified or registered mail, return receipt requested, not less than thirty (30) days next preceding the then expiration date of the Letter of Credit, that it elects not to have such Letter of Credit renewed; and

(iii)    The Letter of Credit shall be transferable by the beneficiary thereof, without charge to the beneficiary, and that any failure to pay the transfer charges shall not affect the beneficiary's ability to transfer the Letter of credit; the Letter of Credit may be transferred as aforesaid from time to time, by the then beneficiary under the letter of credit; to effectuate a transfer under the Letter of Credit, the beneficiary must notify the Issuing Bank in a writing signed by an authorized signatory of beneficiary, of the name and address of the transferee and of the effective date of the transfer; and upon the Issuing Bank's receipt of such writing, the Issuing Bank will issue an amendment to the Letter Credit that changes the name and address of the beneficiary hereof and shall deliver the original of such amendment to the new beneficiary/transferee and a copy thereof to the prior beneficiary/transferor.

(b)    Landlord, after its receipt of the Non-Renewal Notice, shall have the right, exercisable by a sight draft only, to receive the moneys represented by the Letter of Credit, which moneys shall be held by Landlord as a cash deposit pursuant to the terms of this Article pending the replacement of such Letter of Credit.

C.    In the event of a sale or transfer of the land or the Building, or the then Landlord's interest in the land or the Building, or a leasing by the then Landlord of the land or the Building or of Landlord's interest therein, Landlord shall have the right, at no cost or expense to Landlord,

to transfer or assign such Letter of Credit, to the vendee, transferee or lessee, and Landlord shall notify Tenant, by certified mail, return receipt requested, of such sale, transfer or lease, together with the name and address of such vendee, transferee or lessee, and Landlord shall thereupon be released by Tenant from all liability for the return of such Letter of Credit. In such event, Tenant agrees to look solely to the new landlord for the return of said Letter of Credit. It is agreed that the provisions hereof shall apply to every transfer or assignment made of said Letter of Credit to a new Landlord. In connection with the foregoing, Tenant, at no cost to Landlord, shall cooperate with Landlord and such vendee, transferee or lessee in connection with the transfer or assignment of such Letter of Credit, including, without limitation, executing and delivering, within five (5) days after demand therefor, any and all instruments, certificates, agreements or other documents that Landlord, such vendee, transferee or lessee, or the Issuing Bank may require.

D.       Tenant covenants that it will not assign or encumber, or attempt to assign or encumber, such Letter of Credit, and that neither Landlord nor its successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment, or attempted encumbrance.

E.       In the event that at any time after the date of this lease Landlord, in Landlord's reasonable opinion, believes that circumstances have occurred indicating that the Issuing Bank may be incapable of, unable to, or prohibited from honoring the then existing Letter of Credit (hereinafter referred to as the **"Existing L/C"**) in accordance with the terms thereof, then, upon the happening of either of the foregoing, Landlord may send written notice to Tenant (hereinafter referred to as the **"Replacement Notice"**) requiring Tenant within thirty (30) days to replace the Existing L/C with a new letter of credit (hereinafter referred to as the **"Replacement L/C"**) from an Issuing Bank meeting the qualifications described in Section B. Upon receipt of a Replacement L/C meeting the qualifications of Section B, Landlord shall forthwith return the Existing L/C to Tenant. In the event that (a) a Replacement L/C meeting the qualifications of Section B is not received by Landlord within the time specified or (b) Landlord reasonably believes an emergency exists, then in either event, the Existing L/C may be presented for payment by Landlord and the proceeds thereof shall be held by Landlord in accordance with this. Article subject, however, to Tenant's right, at any time thereafter prior to a Tenant's default hereunder, to replace such cash security with a new letter of credit meeting the qualifications of Section B.

F.       Tenant's federal employer identification number is: 13 4077799.

53.    **ARBITRATION:**

A.       Either party may request arbitration of any matter in dispute with respect to which arbitration is expressly provided in this lease as the appropriate remedy. The party requesting arbitration shall do so by giving notice to that effect to the other party, and both parties shall promptly thereafter jointly apply to the American Arbitration Association (or any organization successor thereto) in the City and County of New York for the appointment of a single arbitrator.

B.   · The arbitration shall be conducted in accordance with the then prevailing rules of the American Arbitration Association (or any organization successor thereto) in the City and County of New York and, subject to the terms of the immediately succeeding sentence, judgment on the award rendered by the arbitrator may entered in any court having jurisdiction thereof. In rendering such decision and award, the arbitrator shall not add to, subtract from, or otherwise modify the provisions of this lease.

C.       If, for any reason whatsoever, a written decision and award of the arbitrator shall not be rendered within sixty (60) days after the appointment of such arbitrator, then, at any time thereafter before such decision and award shall have been rendered, either party may apply to the Supreme Court of the State of New York or to any other court having jurisdiction and exercising the functions similar to those now exercised by such court, by action, proceeding, or otherwise (but not by a new arbitration proceeding) as may be proper to determine the question in dispute consistently with the provisions of this lease.

D.       All the expenses of the arbitration shall be borne by the parties equally.

54.    **ESTOPPEL CERTIFICATES:** Within ten (10) days after either party's request, the other party shall execute and deliver to the requesting party a statement (i) certifying that this

lease is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and whether any options granted to Tenant pursuant to the provisions of this lease have been exercised, (ii) certifying the dates to which the fixed rent and additional rent have been paid and the amounts thereof, (iii) stating whether or not, to the best knowledge of the signer, the other party is in default in performance of any of its obligations under this lease, or if Tenant is the certifying party, whether Tenant is in default, and, if so, specifying each such default of which the signer may have knowledge, (iv) stating whether Tenant has any rights to offsets or abatement of rent, (v) stating whether Tenant has prepaid any rent for more than one month in advance, and (vi) certifying such other information as the requesting party reasonably requests, it being intended that any such statement delivered pursuant hereto may be relied upon by others with whom the party requesting such certificate may be dealing and their respective successors and/or assigns. Breach of the foregoing will constitute Tenant's acknowledgement which may be relied on by any person holding or proposing to acquire an interest in the Building, this Lease or any superior mortgage, that this Lease is unmodified and in full force and effect and will constitute, as to any such person, a waiver of any defaults on Landlord's part which may exist prior to the date of such request. The foregoing shall not limit any other rights and remedies available to Landlord for breach of this Article.

55.    **BROKER:**

A.    Tenant covenants, warrants and represents that it had no conversations or other communications with any broker, finder or consultant except Newmark & Company Real Estate, Inc., the rental agent for the Building, and CB Richard Ellis Real Estate Services, Inc. (collectively, the **"Broker"**) in connection with the leasing of the demised premises to Tenant and that, to Tenant's best knowledge, there were no brokers or finders except the Broker instrumental in consummating this lease. In addition, Tenant covenants, warrants and represents that it has not retained any person as a broker, finder or consultant, whether on an exclusive or non-exclusive basis, to locate space in Manhattan for lease by Tenant or any other person. Tenant agrees to hold Landlord harmless against any claims for a brokerage commission or consultation fees arising out of any conversations or negotiations had by Tenant with any brokers or finders except for the Broker, including any person claiming to have been retained by Tenant to locate space in Manhattan for lease by Tenant or any other person, regardless of whether such person was actually retained by Tenant or whether such person was in any way involved with this transaction.

B.    Based upon the foregoing representation, Landlord has agreed to pay, pursuant to separate agreements, a brokerage commission to the Broker.

C.    Landlord covenants, warrants and represents that it had no conversations or other communications with any broker, finder or consultant (except the Broker) in connection with the leasing of the demised premises to Tenant and that, to Landlord's best knowledge, there were no brokers or finders except the Broker instrumental in consummating this lease. Landlord agrees to hold Tenant harmless against any claims for a brokerage commission or consultation fees arising out of any conversations or negotiations had by Landlord with any brokers or finders, including the Broker.

56.    **HOLDING OVER**

Tenant acknowledges that possession of the demised premises must be surrendered to Landlord at the expiration or sooner termination of the term of this lease. Tenant agrees to indemnify and save Landlord harmless against all liabilities, costs, suits, demands, charges, and expenses of any kind or nature, including attorneys' fees and disbursements, resulting from a delay by Tenant in so surrendering the demised premises, including, without limitation, any claims made by any succeeding tenant founded on such delay. The parties recognize and agree that the damage to Landlord resulting from any failure by Tenant to timely surrender possession of the demised premises as aforesaid will be extremely substantial, will exceed the amount of fixed rent and additional rent theretofore payable hereunder and will be impossible of accurate measurement. Tenant, therefore, agrees that if possession of the demised premises is not surrendered to Landlord within twenty-four (24) hours after the date of the expiration or sooner termination of the term of this lease, then Tenant shall pay to Landlord, as liquidated damages, a sum equal to three (3) times the per diem fixed rent and additional rent which was payable during the calendar month preceding the calendar month in which the term ended for each day

Tenant holds over and fails to deliver possession of the demised premises. Nothing herein contained shall be deemed to permit Tenant to retain possession of the demised premises after the expiration or sooner termination of the term of this Lease. Landlord, by availing itself of the rights and privileges granted by this provision and the acceptance of the liquidated damages, shall not be deemed to have waived any of its rights and privileges granted in other provisions of this lease, and the rights granted in this Article shall be considered in any event as in addition to and not in exclusion of such other rights and privileges. The aforesaid provisions of this Article shall survive the expiration or sooner termination of the term of this lease.

57.    **NOTICES:**

A.    Except as otherwise expressly permitted in this lease, all notices, demands, approvals, consents, requests and other communications (collectively, **"Notices"**) which under the terms of this lease, or under any statute, must or may be given or made by the parties hereto, must be in writing, and must be made either (i) by depositing such notice in the registered or certified mail of the United States of America, return receipt requested, or (ii) by delivering such notice by a commercial courier (**"next business day delivery"**), which courier provides for delivery with receipt guaranteed, addressed to each party as follows:

| | |
|---|---|
| If to Landlord: | at the address set forth on the first page of this lease |
| With a copy to: | Greenberg Traurig<br>200 Park Avenue<br>New York, New York 10166<br>Attention: Stephen L. Rabinowitz, Esq. |
| If to Tenant: | Morgan Funding, Inc.<br>26 Journal Square<br>Jersey City, New Jersey 07306<br>Attention: Mr. Daniel Mackle<br><br>prior to the Commencement Date,<br><br>and at the demised premises, after the Commencement Date |
| With a copy of default notices and termination notices only to: | Cirino Bruno, Esq.<br>Gusrae, Kaplan & Bruno, PLLC<br>120 Wall Street, 11th Floor<br>New York, New York 10005 |

B.    All Notices shall be deemed to have been delivered (i) if mailed as provided for in this Article, on the date which is three (3) business days after mailing or (ii) if sent by commercial courier, on the date which is one (1) business day after dispatching. Either party may designate by notice in writing given in the manner herein specified a new or other address to which such notice, demand, approval, consent, request or other communication shall thereafter be so given or made. Notwithstanding the foregoing all fixed rent and additional rent statements, bills and invoices may be given by regular mail.

58.    **THE LOWER MANHATTAN PLAN:**

A.    For purposes of this Article 58, unless otherwise defined in this Lease, all terms used herein shall have the meanings ascribed to them in Title 4 of Article 4 of the New York Real Property Tax Law (herein called the **"Lower Manhattan Plan"**). For purposes of the Lower Manhattan Plan, Tenant's Percentage Share shall mean Tenant's Proportionate Share (i.e., .81%).

B.    For so long as Tenant continues to be eligible for the real estate tax abatement benefits of the Lower Manhattan Plan (herein called the **"LMP Abatement Benefits"**) with respect to the demised premises, Landlord agrees to comply with the provisions and requirements of the Lower Manhattan Plan and the rules promulgated thereunder as same relate

to the demised premises and to Landlord (in connection with Tenant's eligibility for the LMP Abatement Benefits), provided, however, that Tenant shall promptly pay to Landlord, as additional rent hereunder, the amount of all costs and expenses (including reasonable attorneys fees and expenses) incurred by Landlord in connection with such compliance, including, without limitation, the amount of any administrative charges or fees imposed by the New York City Department of Finance (herein called the **"Department"**) in connection with such compliance.

C.    Tenant agrees to comply with the provisions and requirements of the Lower Manhattan Plan and the rules promulgated thereunder as same relate to the demised premises; and Tenant shall indemnify and hold harmless Landlord and all lessors under any superior leases and holders of any superior mortgages and its and their respective partners, directors, officers, principals, shareholders, agents and employees from and against any and all claims arising from or in connection with Tenant's failure to so comply, together with all costs, expenses and liabilities incurred in connection with each such claim or action or proceeding brought thereon, including, without limitation, all reasonable attorneys' fees and expenses.

D.    (i)    In accordance with the Lower Manhattan Plan and notwithstanding anything to the contrary contained in this Lease, Landlord agrees to allow Tenant a credit against the fixed annual rent and the recurring additional rent (including Tenant's Tax Payments) payable by Tenant hereunder in an amount that, in the aggregate, equals the full amount of any abatement of real estate taxes granted for the demised premises pursuant to the Lower Manhattan Plan and actually received by Landlord (herein called the **"Actual LMP Benefits"**). Landlord shall, within thirty (30) days after its receipt of the Actual LMP Benefits, credit the full amount thereof against the next installments of fixed annual rent and/or additional rent becoming due hereunder.

(ii)    Tenant shall promptly pay to Landlord, as additional rent hereunder, the amount of all or any portion of the Actual LMP Benefits that have been credited against fixed annual rent and/or additional rent becoming due hereunder, and which are thereafter revoked (including, without limitation, if such Actual LMP Benefits are revoked due to the exercise by Tenant of its right to assign or sublease pursuant to the terms of this Lease), together with any interest and/or penalties imposed against Landlord in connection with such Actual LMP Benefits.

E.    In accordance with Section 499-C(5) of the Lower Manhattan Plan, Landlord agrees and informs Tenant that the availability of the LMP Abatement Benefits are subject to the following:

(i)    an application for abatement of real property taxes pursuant to Title 4 of Article 4 of the New York Real Property Tax Law will be made for the demised premises;

(ii)    the rent, including amounts payable by Tenant for real property taxes, will accurately reflect any abatement of real property taxes granted pursuant to Title 4 of Article 4 of the New York Real Property Tax Law for the demised premises;

(iii)    at least thirty-five dollars ($35.00) per square foot must be spent on improvements to the demised premises and the common areas of the Building for tenants with more than 125 employees and at least five dollars ($5.00) per square foot must be spent on improvements to the demised premises and the common areas of the Building for tenants with 125 or less employees, as more particularly described in the Lower Manhattan Plan; and

(iv)    all abatements granted with respect to the Building pursuant to Title 4 of Article 4 of the New York Real Property Tax Law will be revoked if, during the Benefit Period, real estate taxes or water or sewer charges or other lienable charges are unpaid for more than one year, unless such delinquent amounts are paid as provided in subdivision four of section four hundred ninety-nine-f of Title 4 of the New York Real Property Tax Law.

F.    Nothing contained herein shall be construed to impose any obligation on Landlord to perform, or to incur any cost for, any improvements to the demised premises and/or the common areas to establish Tenant's eligibility for the LMP Abatement Benefits.

G.    (i)    Landlord, upon not less than twenty (20) days advance written notice from Tenant, agrees to cooperate with Tenant to execute, deliver and file, together with the Abatement

Application (as hereinafter defined), the affidavit required by Section 499C(7) of the Lower Manhattan Plan.

(ii)   Landlord, upon not less than twenty (20) days advance written notice from Tenant, agrees to cooperate with Tenant to execute, deliver and file, within one hundred eighty (180) days after the Commencement Date, an application (the "**Abatement Application**") for a certificate of abatement in accordance with Section 499-D of the Lower Manhattan Plan. Landlord further agrees to provide all other information required by the Department pursuant to Section 499-D of the Lower Manhattan Plan and to otherwise comply with the provisions of said Section 499-D.

(iii)   For so long as Tenant continues to be eligible for the LMP Abatement Benefits with respect to the demised premises, Landlord, upon not less than twenty (20) days advance written notice from Tenant, agrees to cooperate with Tenant to annually execute, deliver and file a certificate of continuing eligibility in accordance with Section 499-F of the Lower Manhattan Plan, and any other certificates or filings required by the Lower Manhattan Plan.

(iv)   Tenant shall promptly pay to Landlord, as additional rent hereunder, the amount of all costs and expenses (including reasonable attorneys' fees and expenses) incurred by Landlord in connection with the performance of Landlord's obligations pursuant to this Section 58, including, without limitation, the amount of any administrative charges or fees imposed by the Department in connection with such compliance.

H.   In the event that Landlord shall default in the performance or observance of any of the covenants, terms, provisions or conditions on its part to be performed or observed under this Article 58, this Lease shall remain unaffected thereby and shall continue in full force and effect, and Landlord's liability for such default, if any, shall be limited to the payment of damages which shall in no event exceed the aggregate amount of the LMP Abatement Benefits with respect to the demised premises to which Tenant would have been entitled but for such default.

I.   Notwithstanding anything contained in this Article 58, Landlord makes no representation or warranty as to the amount, if any, of Actual LMP Benefits that will be received by Landlord.

59.   **ICIP:**

A.   Tenant acknowledges that Landlord has advised Tenant that Landlord may (but shall not be obligated to) apply for an exemption from real estate tax payments under the Industrial Commercial Incentive Program of the City of New York (which, as same may from time to time be amended, is herein referred to as the "ICIP"). Tenant will cooperate in all reasonable respects with Landlord in applying for, and in obtaining from the Department of Finance of the City of New York, a certificate of eligibility determining that Landlord is eligible for exemption from real estate tax payments pursuant to the ICIP and the regulations promulgated pursuant to the ICIP. Tenant represents to Landlord that, within seven (7) years immediately preceding the date of this lease, Tenant has not been adjudged by a court of competent jurisdiction to have been guilty of (x) an act, with respect to a building, which is made a crime under the provisions of Article 150 of the Penal Law of the State of New York or any similar law of another state, or (y) any act made a crime or violations by the provisions of Section 235 of the Real Property Law of the State of New York, nor is any charge for violation of such laws presently pending against Tenant. Upon request of Landlord, from time to time, Tenant agrees to update said representation when required because of the ICIP and regulations thereunder. Tenant further agrees to cooperate with Landlord in compliance with such ICIP and such regulations to aid Landlord in obtaining and maintaining said real estate tax exemption and, if requested by Landlord, to post a notice in a conspicuous place in the Demised Premises and to publish a notice in a newspaper of general circulation in the City of New York, in such form as shall be prescribed by the Department of Finance, stating that persons having information concerning any violation by Tenant of Section 235 of the Real Property Law or any Section of Article 150 of the Penal Law or any similar law of another jurisdiction may submit such information to the Department of Finance to be considered in determining Landlord's eligibility for tax exemption benefits. In furtherance of the foregoing, and in addition, the other applicable provisions of this lease, all Changes, including Tenant's Work, shall be performed in compliance with the ICIP and the regulations thereunder, as well as the rules and regulations of the New

York City Department of Business Services, Division of Labor Services ("DOBS/DLS"), including, without limitation, the filing and obtaining of all required applications, permits, licenses and certificates and, if required by the DOBS/DLS, the hiring of apprentice laborers.

60.  **MISCELLANEOUS:**

    A.  **Consents.**  If Tenant shall request Landlord's consent or approval pursuant to any of the provisions of this lease or otherwise, and Landlord shall fail or refuse to give, or shall delay in giving, such consent or approval, Tenant shall in no event make, or be entitled to make, any claim for damages (nor shall Tenant assert, or be entitled to assert, any such claim by way of defense, set-off, or counterclaim) based upon any claim or assertion by Tenant that Landlord unreasonably withheld or delayed its consent or approval, and Tenant hereby waives any and all rights that it may have, from whatever source derived, to make or assert any such claim. Tenant's sole remedy for any such failure, refusal, or delay shall be an action for a declaratory judgment, specific performance, or injunction, and such remedies shall be available only in those instances where Landlord has expressly agreed in writing not to unreasonably withhold or delay its consent or approval or where, as a matter of law, Landlord may not unreasonably withhold or delay the same. In addition, whenever in this lease Landlord is required to be reasonable in the granting of any consent or approval or otherwise, Landlord shall not be deemed to have been unreasonable in the refusal to give its consent or approval or otherwise if: (a) Landlord is not permitted to do so under the terms of any superior lease or superior mortgage or (b) the consent or approval of any superior lessor or holder of superior mortgagee is required and has been denied or not given.

    B.  **Certain Definitions.**

        (a)  The terms "**include**," "**including**" and "**such as**" shall each be construed as if followed by the phrase "**without being limited to**" whether or not so stated.

        (b)  Wherever there is a requirement that a consent or approval of a party hereto not be "**unreasonably withheld**" or words of similar import, such terms shall be construed as if followed by the phase "**or delayed**" whether or not so stated.

        (c)  The term "**laws and/or requirements of public authorities**" and words of like import shall mean laws and ordinances of any or all of the federal, state, city, county and local governments and rules, regulations, orders and/or directives of any or all departments, subdivisions, bureaus, agencies or offices thereof, or of any other governmental, public or quasi-public authorities having jurisdiction over the land, the Building, the Demised Premises or any part thereof and/or the direction of any public officer pursuant to law.

        (d)  The term "**requirements of insurance bodies**" and words of like import shall mean rules, regulations, orders and other requirements of the New York Board of Fire Underwriters and/or the New York Fire Insurance Rating organization and/or any other body performing the same or similar functions and having jurisdiction or cognizance of the land, the Building and/or the Demised Premises.

        (e)  The term "**repair**" shall be deemed to include restoration and replacement as may be necessary to achieve and/or maintain good working order and condition. The foregoing definition is not intended and shall not be deemed to increase any repair obligations imposed on either Landlord or Tenant pursuant to the provisions of this lease.

        (f)  The terms "**person**" and "**persons**" as used in this lease, shall be deemed to include natural persons, firms, corporations, limited liability companies, partnerships, associations and any other private or public entities.

        (g)  All references in this lease to numbered or lettered articles, sections, paragraphs, subparagraphs, subdivisions, exhibits and schedules are references to articles, sections, paragraphs, subparagraphs, subdivisions, exhibits and schedules of this lease, as the case may be, unless expressly otherwise designated.

        (h)  Reference in this lease to Tenant being or not being <u>in default hereunder</u> or <u>in default under this lease</u>, or words of like import, shall mean that Tenant is in or is not in, as the case may be, default in the observance or performance of, or compliance with, one or more of

the terms, covenants, obligations or conditions on Tenant's part to observe, perform or comply with under this lease, or that a condition of the character described in Article 16 has occurred and continues or has not occurred or does not continue, as the case may be.

        (i)    The term **"Event of Default"** means a default under any of the terms, covenants or conditions on Tenant's part to observe, perform or comply with, that remains or remained uncured after the giving of any required notice to Tenant and the expiration of any applicable cure period, or any of the events described in Section 16(a) of this lease.

        (j)    The term **"Prime Rate"** shall mean, on any particular date, a rate per annum equal to the rate of interest published in The Wall Street Journal as the **"prime rate,"** as in effect on such day, with any change in the **"Prime Rate"** resulting from a change in said prime rate to be effective as of the date of the relevant change in said prime rate; provided, however, that if more than one prime rate is published in The Wall Street Journal for a day, the average of the prime rates shall be used; provided, further, however, that the prime rate (or the average of the prime rates) will be rounded up to the nearest 1/16 of 1% or, if there is no nearest 1/16 of 1%, to the next higher 1/16 of 1%. In the event that The Wall Street Journal ceases or temporarily interrupts publication (or publication of a **"prime rate"**), then the Prime Rate shall mean the daily average prime rate published in another business newspaper, or business section of a newspaper, of national standing chosen by Landlord. If The Wall Street Journal resumes publication, the substitute index will immediately be replaced by the prime rate published in The Wall Street Journal.

        (k)    The term **"Interest Rate"** shall mean, on any particular date, a rate per annum equal to the Prime Rate plus two (2%) percent, with any change in the **"Interest Rate"** resulting from a change in the Prime Rate to be effective as of the date of the relevant change in Prime Rate.

        (l)    References in this lease to Landlord having <u>no liability</u> to Tenant or to any other person or being <u>without liability</u> to Tenant or to any other person, or words of like import, shall mean that Tenant is not entitled to terminate this lease, or to claim actual or constructive eviction, partial or total, or to receive any abatement or diminution of rent, or to claim or receive damages of any kind (including consequential damages) or to be relieved in any manner of any of its other obligations hereunder, or to be compensated for loss or injury suffered or to enforce any other kind of liability whatsoever against Landlord under or with respect to this lease or with respect to Tenant's use or occupancy of the demised premises.

        C.    **Reservation.** All portions of the Building, except for the inside surfaces of all walls, windows and doors bounding the Demised Premises, but including exterior building walls, core corridor walls and doors and any core corridor entrances, and all space in or adjacent to the Demised Premises used for shafts, stacks, pipes, conduits, fan rooms, ducts, electric or other utilities, sinks, elevators, fire stairs or other building facilities and systems, and the use of all of the foregoing, as well as access thereto through the Demised Premises for the purpose of operation, maintenance, decoration and repair, are reserved to Landlord.

        D.    **Exculpation.** Tenant shall look only to Landlord's estate and interest in the land and Building, for the satisfaction of Tenant's remedies for the collection of a judgment (or other judicial process) against Landlord in the event of any default by Landlord under this lease or otherwise in respect of, or appurtenant to, this lease, the demised premises, the Building or the land on which the Building is located, and no other property or assets of such Landlord (or any partner, member, officer or director thereof, disclosed or undisclosed), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under or with respect to this lease, the relationship of Landlord and Tenant hereunder, or the use and occupancy of the demised premises by Tenant or by any person claiming by, through or under Tenant or otherwise in respect of, or appurtenant to, this lease, the demised premises, the Building or the land on which the Building is located.

        E.    **Covenants as Conditions.** All of the covenants of Tenant hereunder shall be deemed and construed to be **"conditions"** as well as **"covenants"** as though the words specifically expressing or implying covenants and conditions were used in each separate instance.

F. **Governing Law.** This lease shall be governed in all respects by the laws of the State of New York applicable to agreements made and wholly executed therein without reference to conflicts of laws principles.

G. **Construction.** If any of the provisions of this lease, or the application thereof to any person or circumstances, shall, to any extent, be invalid or unenforceable, the remainder of this lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this lease shall be valid and enforceable to the fullest extent permitted by law. This Agreement and the Lease shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement or the Lease to be drafted.

H. **Lease Not Binding Until Executed.** Submission by Landlord of this lease for execution by Tenant shall confer no rights nor impose any obligations on either party unless and until both Landlord and Tenant shall have executed this lease and duplicate originals thereof shall have been delivered to the respective parties.

I. **Parties Bound.** If there shall be more than one person named as tenant herein, then all such persons shall be deemed to be joint tenants in the leasehold estate demised hereby, with joint and several liability hereunder.

J. **Due Authority.** Landlord and Tenant each represent to each other that the person executing and delivering the Lease is duly authorized to do so.

K. **No liability.** Neither Landlord's right to enter the demised premises, nor Landlord's right to cure any default of any of the terms, covenants or conditions on Tenant's part to observe, perform or comply with, nor Landlord's right to observe, perform or comply with of Tenant's obligations under this lease, shall impose upon Landlord any obligation whatsoever to do so or to perform any repairs, replacements, restoration, alterations or other work, at, in, on or upon the demised premises, nor shall any of the foregoing rights impose upon Landlord any liability if there is a default under any of the terms, covenants or conditions on Tenant's part to observe, perform or comply with, or if Tenant fails to make or perform any repair, replacement, restoration, alteration or other work.

61. **LOWER MANHATTAN ELECTRICAL PLAN:**

Tenant acknowledges receipt of advice from Landlord to the effect that, prior to the date of this Agreement, Landlord filed an application to qualify the Building under the ICIP. Landlord and Tenant further acknowledge that in the event the Building qualifies under the ICIP, then due to such qualification, the Building may also qualify under the Lower Manhattan Energy Plan, Article 2-I of the General City Law of the City of New York (the "LMEP") and, if Landlord has applied for, and successfully qualifies the Building under the LMEP, then Landlord shall credit against Tenant's Cost, the reduction in the Landlord's Rate realized by the Building under the LMEP to the extent attributable to the demised premises. In accordance with Article 2-I of the General City law of the City of New York, subsection 25-bb(c)(5), Landlord shall set forth on all invoices for Tenant's bills from Landlord for electricity (for which reductions thereof are by reason of the applicability of the LMEP), substantially the following language:

"Tenant may be entitled to share a rebate which your Landlord has received for charges for energy pursuant to the revitalization area energy rebate program. The amount is separately stated and identified in this bill."

**IN WITNESS WHEREOF,** Landlord and Tenant have duly executed this lease as of the day and year first above written.

LANDLORD:

**W12/14 WALL REALTY, LLC**

By:  W12/14 Wall Mezzanine LLC, its Manager

By:  W12/14 Wall Acquisition Associates LLC,
     its Manager

    By:  Stellar 14 Wall Associates LLC,
     its Manager

        By:  Stellar Promote LLC, its Manager

           By:  Wrubel 99 LLC, its Manager

               By: _____
                       Arthur Wrubel, its Manager

TENANT:

MORGAN FUNDING, INC.

By: _____
    Name:  Daniel Mackle
    Title:  President

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK )

On _____, _____, before me, the undersigned, a Notary Public in
and for the State of New York, personally appeared _____, personally known to
me or proved to me on the basis of satisfactory evidence to be the individual whose name is
subscribed to the within instrument and acknowledged to me that he executed the same in his
capacity, and that by his signature on the instrument, the individual, or the person upon behalf of
which the individual acted, executed the instrument.

_____
        Notary Public

CIRINO M. BRUNO
Notary Public, State of New York
No. 01BR6511227
Qualified in Westchester County
Commission Expires July 31, 20__

**Exhibit A**

**Floor Plan**

PLEASE INITIAL:

Landlord

Tenant



SEP-24-2003  01:18        NEWMARK                        212 809 2579      P.04

MORGAN FUNDING

B

D   E

C

TOTAL  P.04

14 Wall Street

16 JULY 2003

Stellar Management
14 Wall Street
New York - New York

Newman Company
125 Park Avenue
New York - New York 10017



floor 8

LaMarca / Ebner Interiors, Inc.
Architectural Planning and Design